## Fitch and others v. Cotheal.

The wife of J. W. being seised of lands, joined him in executing three several mortgages to secure his bonds for money lent. Before his death, his attorney, with means furnished by him, paid the mortgagees, and took an assignment of the bonds and mortgages, to S., who soon after gave J. W. a certificate that he held them in trust for J. W. and subject to his order and control.

*Held*, that J. W. was the principal debtor, and his wife's lands stood in the relation of a surety for his debt. And that after the assignment and certificate, the securities belonged to him in equity, and the lands were thereby discharged from the lien of the mortgages.

*Held* also, that one who subsequently purchased the mortgages of S. in good faith and without notice, could not enforce them against the widow of J. W. and her heirs.

Such purchaser exempted from costs, after an unsuccessful defence.

May 15, 1844.

The bill in this cause was filed to restrain the sale of three lots in Brooklyn, which were advertised by the defendant Cotheal, under the powers of sale contained in three several mortgages executed thereon by John Webster and Lydia his wife.

It appeared that the wife of Webster was seised of the lots in fee, that she died intestate and without issue on the 24th of May, 1832, and that the complainants are her heirs at law.

On the 8th of May, 1832, John Webster borrowed $1200 of one Bergen, $600 of J. Wyckoff's administrators, and $1000 of W. Ellsworth; to secure which sums he gave his bond to the respective lenders, and he and his wife executed a mortgage to each, conveying to each lender one of the lots, as a security for their respective loans.

On the 7th of June, 1833, Bergen on receiving the sum due on his bond and mortgage, assigned the same to S. W.; and on the 15th of June, 1833, the other mortgagees being paid the sums due to them respectively, assigned to S. W. the other two bonds and mortgages. S. W. professed to hold them as the trustee for his brother N. W., who was Webster's attorney and legal adviser. The testimony established that N. W. paid the mortgagees, but that more than $2900 of the amount was furnished to him by Webster about the same date, and that he re-

ceived the residue, $49 11, from or in behalf of Webster, within two months thereafter. On the 15th of October, 1833, S. W. signed and delivered to Webster a writing drawn up by N. W., certifying that he held the three mortgages in trust for Webster and subject to his order and control.

The bonds and mortgages remained in the possession of S. and N. W., and were subsequently assigned by S. W. according to N. W.'s directions, to different persons, as valid, and subsisting securities ; and in March, 1839, they were purchased by Cotheal, who paid nearly the amount appearing to be due upon them, and received assignments of them, without any direct notice of the equities of the heirs. He then proceeded to foreclose the mortgages by an. advertisement under the statute. Some other particulars will be found in the decision.

*H. Wilson and W. Silliman*, for the complainants.

*J. Slosson*, for the defendant Cotheal.

THE ASSISTANT VICE-CHANCELLOR.—S. W. became the assignee of the three bonds and mortgages in question in June, 1833, and did not part with the title of either of them until November, 1834. On the 15th day of October, 1833, he executed a certificate to Webster, the mortgagor, declaring that he held the mortgages in trust for Webster and subject to his order and control. The mortgages therefore belonged in equity, to John Webster in October, 1833. The lands mortgaged were the estate of his wife. His interest in them terminated upon her death in May, 1832, and they descended to her heirs. As between Webster and her heirs, in October, 1833, he was the principal debtor in respect of these mortgages, and the lands mortgaged stood in the relation of his surety. When therefore Webster became the equitable owner of the mortgages, the lands were discharged from the lien. As the principal debtor, he could not purchase the obligation, and then collect it of his own surety.

This is the aspect of the case, whether S. W. be deemed the assignee for his own benefit, or a trustee for N. W. The dec-

Fitch v. Cotheal.

laration of trust to Webster was drawn by N. W., who thus assented to its truth.

If I am to consider S. W. as having acted throughout, for and under the direction of N. W.; (and such appears to be the effect of the testimony ; ) the case is still stronger to show that the lien of the mortgages was extinguished in 1833.

The mortgages all became due on the 8th day of May, 1833. The assignment of Bergen's mortgage to S. W., is dated June 7th, was proved June 10th, and recorded June 23d, 1833. The other two assignments to S. W. are dated June 15th, were proved June 17th, and recorded June 22d, 1833.

By the account rendered by N. W. to John Webster, which is competent testimony on the assumption that the mortgages were assigned to S. W. for N. W.'s use and benefit; it appears that the three mortgages were all charged by N. W. to Webster, as having been paid on the same day, viz : June 10th, 1833. It is not probable that he paid the two mortgages to Wyckoff's executors and W. Ellsworth before the date of the assignments of the same. It is much more probable that Bergen executed the assignment of his mortgage and left it in escrow with the then partner of N. W. and who proved its execution, to be delivered when the money was paid. By the amounts paid, it would seem that interest was paid to Bergen to the 8th of June, and to Wyckoff's executors to the 15th of June. As the account rendered to Webster enters them as having all been paid at once, my conclusion on the whole is, that they were paid on the 15th day of June.

By the same account, N. W. credits Webster June 14, 1833, with "*net proceeds of note for* $2975," the sum of $2904 76. The whole amount paid for the three mortgages was $2953 87, as shown by the same paper. . Then on the 25th of June, 1833, N. W. received $47 06, of rent for Webster, which with the proceeds of the note, leaves a deficiency of only $2 05, in paying the mortgages. Continuing the account between Webster and N. W. to the date of Stephen W.'s declaration of trust, N. W. received $54 for rent, August 10, and on the 11th of September, he paid out $10 30 for insurance. So that at the date of the declaration, he appears by this account to have been indebted to

Webster, and the mortgages paid off. Then comes the execution of the declaration of trust, drawn up by N. W. and signed by S. W., and which is utterly inconsistent with the idea that either of them then had a particle of interest in the mortgages.

This evidence leads me irresistibly to the conclusion, that Webster's note was made for the purpose of raising money to procure these mortgages for his benefit. That they were transferred to S. W. the better to subserve that purpose, and to prevent a merger. And that S. W. delivered the declaration of trust, as soon as N. W. was fully paid the trifling advance which he made to obtain the assignments.

Without further detail, it is clear that the mortgages were equitably discharged, as early as October, 1833, and the heirs of Lydia Webster who owned the land, were then entitled to have them given up and cancelled. This was an equity which no subsequent sale of the mortgages, even to a *bona fide* purchaser for full value and without notice, could divest or overcome. And whatever may be the hardship of the case in reference to Mr. Cotheal, it must prevail against the title which he acquired as assignee of the mortgages.

This conclusion renders it needless for me to examine at large the question whether Mr. Cotheal had notice of the mortgages being paid, either actual or constructive.

So far as it has a bearing upon the decision as to costs, it appears to me that although he should have had his suspicion excited by some of the circumstances attending these securities, and that he did not act discreetly in purchasing them; yet there is no proof that he was actually aware of the truth, or that he was guilty of any bad faith in the transaction.

N. and S. W. stand in a different position before the court, and they must bear the consequences of the wrongful sale of these extinguished mortgages.

The complainants are entitled to have the mortgages delivered up and cancelled of record, and the defendants S. and N. W. must pay their costs of suit.