[No. 6,299.—In Bank.]

## HASSEY v. WILKE.

55  525
77   62
55  525
101  420

FORECLOSURE SALE—PRINCIPAL AND SURETY—CONSTRUCTIVE TRUST—CONSTRUCTIVE NOTICE.—The plaintiff, to secure the note of her husband, (given for his own indebtedness) executed, jointly with him, a mortgage upon land previously conveyed to her by him, by deed of gift duly recorded; and, upon the foreclosure of the mortgage, the land was purchased by one B., for the husband, and with his money, and was by B. conveyed to him. Afterward, the husband, to secure an antecedent indebtedness, conveyed to the defendant, who took without actual notice of the premises. *Held*, 1st, that the husband, in purchasing the property through B. at the foreclosure sale, was but paying his own debt, and, therefore, took the title in trust for the plaintiff; and 2nd, that the records were sufficient to put the defendant upon inquiry, and he was bound at his peril to inform himself as to the facts; and that he therefore took, subject to the trust.

ID.—ID.—ID.—ID.—McKEE, J., dissenting, was of the opinion that the defendant took without actual or constructive notice that B. held the title in secret trust for the husband, or that the latter held it for his wife.

APPEAL from a judgment for the defendant, in the Nineteenth District Court, City and County of San Francisco. WHEELER, J.

*J. R. Sharpstein*, and *McAllister & Bergin*, for Appellant.

By purchase of the property at the foreclosure sale, Hassey simply paid his own debt, and took the land in trust for his wife. (*Fitch* v. *Cotheal*, 2 Sand. Ch. 29.) The defendant purchased with notice of the trust. The plaintiff's title was evidenced by a deed of gift to her on record; and the foreclosure proceedings disclosed the fact that the property was mortgaged to secure the debt of F. A. Hassey. The fact that the purchaser had no actual notice from the record, does not rebut the fact of notice. (Civ. Code, § 1213; 1 Perry on Trusts, § 223; *Ramsdell* v. *Fuller*, 28 Cal. 37; 1 Story's Eq. Jur. §§ 400–3.)

*Joseph Napthaly*, and *John Hunt, Jr.*, for Respondent.

In this case, there were no circumstances which could or ought to have excited inquiry upon respondent's part. The Registry Act never operated as constructive notice, save of the facts which appear upon the face of the record. (*Chamberlain* v. *Bell*, 7 Cal. 292; Willard's Eq. 256.)

There was nothing in the records to affect the defendant with notice that Burling purchased for Halsey, or that the money was furnished by the latter; or that a resulting trust existed in his favor.

Ross, J.:

By this action, the plaintiff seeks to have the defendant Wilke decreed a trustee for her in respect to certain real property, and to compel a conveyance of it to her. There is no dispute about the facts, which, as admitted by the pleadings, are as follows: On the 10th of August, 1868, plaintiff and one F. A. Hassey were husband and wife. On that day, F. A. Hassey conveyed to plaintiff by deed of gift, in consideration of his love and affection for her, and for her better support, the block of land in question in this action. The deed was duly recorded in the office of the County Recorder of the City and County of San Francisco, on the 11th of August, 1868, in which city and county the land is situated. On the 20th of September, 1869, F. A. Hassey borrowed of Nicholas Luning $10,000, and executed

his promissory note therefor, to secure the payment of which the plaintiff, at the request of her husband (he joining her) executed to Luning a mortgage upon her said property. This mortgage was duly recorded on the 20th of September, 1869. The note not having been paid, Luning, on the 29th of September, 1873, commenced an action in the Nineteenth District Court to foreclose the mortgage, and on the 29th of January, 1875, a decree of foreclosure was duly entered in the action. Under this decree, the property was sold on the 12th of March, 1875, to one Burling, for the sum of $13,721.43. Burling made the purchase for F. A. Hassey, the purchase-money having been furnished by Hassey. No redemption having taken place, the Sheriff, on the 26th of October, 1875, executed to Burling a deed conveying the property to him. On the next day, that is to say, on the 27th of October, 1875, Burling executed to F. A. Hassey a deed to the property. This deed was recorded January 18th, 1876.

In August, 1872, and prior to the commencement of the foreclosure proceedings, the plaintiff, with the consent of her husband, went to Europe, and did not return to California till the 5th day of June, 1877.

On the 10th day of May, 1877, F. A. Hassey was indebted to the defendant Wilke in a large sum of money by reason of certain dealings in stocks, and on that day, and in consideration of such indebtedness, executed to Wilke a deed for the property, which deed was recorded June 6th, 1877.

In speaking of the transaction, the defendant Wilke testified: "I took it (the deed) merely to secure old debts, which were getting bigger and bigger every day; the stock declined day after day." And again: "I had to take the conveyance on a minute's notice, merely to secure myself. I don't think there was one day difference when I told Mr. Hassey to give me some security for the debt standing on my books. He told me he had nothing, but he would transfer this piece of property. He had the title drawn off, or the deed drawn off, acknowledged, and brought it over to the office, and I had no time even to make a search of the title. It might have been of some value, or it might have been entirely valueless. I had no time to examine it. It was just taken for whatever it was worth, to cancel part

of the indebtedness. I have not even now searched the title or abstract, or anything of the kind." In response to a question as to what the understanding was with Hassey at the time of the execution of the deed, the defendant answered as follows:

"I told him as soon as he pays his indebtedness he might have the property back; and I am willing to give it up, and wish he would pay it."

At the time Wilke took the deed from Hassey, he (Wilke) had no actual knowledge of the fact that the land was the separate property of *Mrs.* Hassey.

1. It is clear that the plaintiff, in mortgaging her separate property to secure the payment of her husband's debt to Luning, became, as between herself and husband, a surety only. *Spear* v. *Ward*, 20 Cal. 660; *Loomer* v. *Wheelwright*, 3 Sand. Ch. 135; *The Bank of Albion* v. *Burns*, 46 N. Y. 170; 1 Bishop on Married Women, 604.) And it is equally clear that the husband, in purchasing the property through Burling, at the foreclosure sale, was but paying his own debt; and that he took, and thereafter held, the title to the property in trust for plaintiff. (*Fitch* v. *Cotheal*, 2 Sand. Ch. 29.)

2. Did the trust follow the property into the hands of the defendant, Wilke? In 1 Story's Eq. Jurisprudence, § 403, it is said: "In America it is uniformly held that the registration of a conveyance operates as constructive notice to all subsequent purchasers of any estate, legal or equitable, in the same property." And by § 1213 of our Civil Code, it is provided that "every conveyance of real property, acknowledged or proved, and certified and recorded as prescribed by law, from the time it is filed with the Recorder for record, is constructive notice of the contents thereof to subsequent purchasers and mortgagees." The term "conveyance" as used in this section embraces mortgages. (Civ. Code, § 1215.)

Wilke must, therefore, be held to have known that the property in question was conveyed as a gift by Hassey to his wife in 1868, and that it thereupon became her separate property, and that on the 20th of September, 1869, Mrs. Hassey mortgaged this, her separate property, to Luning, to secure the individual note of·her husband. The note was the principal obligation—the mortgage merely a security. Assuming, as most

favorable for defendant, that upon these facts no presumption arises that the money advanced by Luning was for the benefit of the husband, still the most that can be claimed for him is that the record upon its face was equivocal. In that view, according to the record the money might have been (as it was in fact) advanced for the benefit of the husband, and the wife's property might have been (as it was in fact) merely security for his debt. The record was, at least, sufficient to put Wilke upon inquiry, and he was bound, at his peril, to inform himself as to the facts. (*Ramsdell* v. *Fuller*, 28 Cal. 37; *Nelson* v. *Allen*, 1 Yerg. (Tenn.) 360; *Bank of Albion* v. *Burns*, 46 N. Y. 170.)

Fortunately, however, in protecting the plaintiff's equities, it does not seem that the defendant is placed in any worse position than he would have occupied had the property never been conveyed to him, for it does not appear that he gave up or relinquished anything on the faith of the conveyance; but, on the contrary, it seems from his own testimony that the transfer was accepted by him, not in absolute payment or satisfaction of the debt due to him from F. A. Hassey, but rather as doubtful security for the antecedent indebtedness, which might or might not be of some avail.

It results that the judgment of the Court below must be reversed and cause remanded to the Court below for a new trial.

So ordered.

MORRISON, C. J., McKINSTRY, J., MYRICK, J., and THORNTON, J., concurred.

[SHARPSTEIN, J., being disqualified, did not sit in the case.]

McKEE, J., dissenting:

The property in dispute in the case of *Ramsdell* v. *Fuller*, referred to in the opinion of Mr. Justice Ross, was conveyed during coverture to the wife for a money consideration. Presumptively the property thus acquired by the wife was common property. But that presumption was liable to be rebutted by proof that the money which was paid for the property constituted the separate fund of the wife; and that fact being proven, it was

held by the Court that the wife was entitled to a decree setting aside, as a cloud upon her title, a mortgage upon the property which had been executed by the husband alone, upon the ground that the record of title in the case was notice to the mortgagee and all the world, that the land in dispute might be the separate property of the wife, and every party dealing with it did so at his peril. "The plaintiff," said the Court, "was, by record, put upon inquiry as to the true condition of the title." But the case in hand is not that case.

It is true, that the defendant in this case had constructive notice that the title, which he acquired to the land in dispute, had at one time belonged to the plaintiff in the action as her separate property; but the record and judicial proceedings which imparted to him that notice, also showed that she had, jointly with her husband, mortgaged it to one Nicholas Luning; that the mortgage had been, by judicial proceedings against her and her husband, foreclosed; and that her title had passed by sheriff's deed under decree of foreclosure to Burling, the purchaser, at the foreclosure sale. The deed which Burling obtained at this compulsory sale was as effectual in vesting in him the title of the plaintiff to the land, as though he had purchased it directly from her; and this title passed by deed from Burling to Hassey; and by deed from Hassey to the defendant, who took it without actual or constructive notice that Burling held the title in secret trust for Hassey, or that Hassey held it for his wife.

I, therefore, respectfully dissent from the judgment of my associates. I think the order of the Court below should be affirmed.