Argued 15 December, 1898; decided 30 January, 1899.

## DENNY v. SEELEY.

[55 Pac. 976.]

1. RELATION OF PRINCIPAL AND SURETY.—Where one who is not personally responsible as a surety pledges his property to secure the debt or default of another, such property becomes a surety or guaranty for the principal debtor, and any act of the creditor that would discharge a personal surety will relieve the property: *Gray* v. *Holland*, 9 Or. 512, cited.

2. RELEASE OF SURETY.*—A surety is released only *pro tanto*, where the creditor, without his consent, releases some property which was intended by the debtor as security, or where, by the gross carelessness of the creditor, such property is lost: *Brown* v. *Rathburn*, 10 Or. 158, cited.

3. EFFECT OF SELLING SECURITIES.—A surety is not released by the act of the creditor, pursuant to the principal debtor's direction, in selling for its market value collateral pledged by the debtor to secure the debt and applying the same as a credit, since the surety is not injured.

From Clatsop : THOS. A. MCBRIDE, Judge.

Suit by O. N. Denny, as receiver of the Portland Savings Bank, against E. A. Seeley and others to foreclose a mortgage. From a decree for plaintiff, part of the defendants appeal.

AFFIRMED.

---

*NOTE.—See *McDougall* v. *Walling*, 55 Am. St. Rep. 871, for some authorities on the question of Releasing Sureties by Extending Time of Payment.

The Right of a Surety to Control the Application of Collaterals is considered in a note to *Fall River National Bank* v. *Slade*, 12 L. R. A. 131.—REPORTER.

For appellants there was a brief over the name of *Stott, Boise & Stout*, with an oral argument by *Mr. Raleigh Stott*.

For respondent there was a brief over the name of *Nixon & Dolph*, with an oral argument by *Mr. Chester V. Dolph*.

Mr. Justice Moore delivered the opinion.

This is a suit to foreclose a deed intended as an equitable mortgage. The transcript shows that E. A. Seeley, L. B. Seeley, and James Means purchased for the sum of $26,000 a tract of land in Clatsop County, and had it conveyed to H. C. Stratton, in trust to secure the payment of a promissory note executed by E. A. and L. B. Seeley to the Portland Savings Bank for the sum of $16,000 and interest. As additional security therefor, and in pursuance of an agreement with Means, L. B. Seeley pledged to the bank fifty shares of the capital stock of the Willamette Falls Electric Light Company, of the face value of $5,000. Prior to the maturity of the note, the bank, at the request of L. B. Seeley, but without the consent of Means, sold the stock for $5,000, the market value thereof, and indorsed the proceeds on said note. Stratton conveyed said tract to plaintiff, who had been appointed receiver of the bank, and, default having been made in the payment of the note, this suit was instituted, but, Means having died prior thereto, the executor of his last will and testament, his widow and heirs were made parties, who, admitting the material allegations of the complaint, aver that the sale of said stock without Means' consent discharged the lien of the mortgage upon the undivided one-third of the land, which they prayed plaintiff might be required to convey to said heirs. The court, however, denied the relief so

demanded, and rendered a decree foreclosing the mortgage, whereupon the said executor, widow and heirs appeal.

It is contended by appellants' counsel that Means having paid one-third of the purchase price of the land conveyed to Stratton in trust to secure the payment of the note of E. A. and L. B. Seeley rendered his interest in the premises in the nature of a surety for their debt, and that the bank, having sold said stock without his consent, so changed the terms of the original contract as to discharge his interest in the land; and hence the court erred in not decreeing a conveyance thereof as prayed for in the answer. The appeal presents for consideration the relation which Means' interest in the real property sustained towards his co-tenants in view of the conveyance of the land to secure the payment of their debt, and the effect upon such interest of the sale, without his consent, of the stock so pledged as additional security.

1. The rule is well settled that whenever a person who is not personally responsible as a surety pledges or mortgages his property to secure the debt, or to answer for the default or miscarriage, of another, such property becomes a surety or guaranty for the principal debtor, and any act of the creditor that would discharge a personal surety will relieve the property : *Gray* v. *Holland*, 9 Or. 512 ; *Rowan* v. *Manufacturing. Co.*, 33 Conn. 1 ; *Spear* v. *Ward*, 20 Cal. 659 ; *Hassey* v. *Wilke*, 55 Cal. 525 ; *Bull* v. *Coe*, 77 Cal. 54 (11 Am. St. Rep. 235, 18 Pac. 808); *Christner* v. *Brown*, 16 Iowa, 130 ; *Ryan* v. *Trustees*, 14 Ill. 20 ; *Wolf* v. *Banning*, 3 Minn. 202 ; *Johns* v. *Reardon*, 11 Md. 465 ; *Knight* v. *Whitehead*, 26 Miss. 245 ; *Barnes* v. *Mott*, 64 N. Y. 397 (21 Am. Rep. 625); *Wallace* v. *Hudson*, 37 Tex. 456. In *White* v. *Ault*, 19 Ga. 551, the facts were that Edward White being indebted on a promissory

note to Henry Ault, and Charles A. Stafford being indebted to White, Stafford, in pursuance of a mutual agreement, gave his note, secured by a mortgage of real property, to Ault, who thereupon surrendered White's note. White, to further secure the payment of Stafford's note, executed a deed to Ault, which was intended as a mortgage of certain lots. Ault, having neglected to record Stafford's mortgage, took judgment against him on his note, and, without White's consent, stipulated to stay the enforcement of the judgment for a given time, and in a suit by White to have his deed set aside it was held that by the transaction White's property became a surety only to Ault for Stafford's debt, and that the stay of execution without White's consent discharged the lien upon the lots. In the notes to the case of *Dering* v. *Earl of Winchelsea*, 1 White & T. Lead. Cas. Eq. 137, the editors, speaking of what acts will constitute the relation of principal and surety, say: "Every one is a surety, within these principles, who incurs a liability in person or estate at the request and for the benefit of another, without sharing in the consideration." "A surety," says Mr. Justice SWAYNE in *Magee* v. *Insurance Co.*, 92 U. S. 93, "is 'a favored debtor.' His rights are zealously guarded, both at law, and in equity. The slightest fraud on the part of the creditor, touching the contract, annuls it. Any alteration after it is made, though beneficial to the surety, has the same effect. His contract exactly as made is the measure of his liability; and, if the case against him be not clearly within it, he is entitled to go acquit."

2. Where, however, no new contract is entered into between the principal debtor and his creditor, but the latter, without the consent of the surety, releases some property which was intended by the debtor as security, or where by the gross carelessness of the creditor such

property is lost, the surety is released only *pro tanto* : 2 Brandt, Sur. (2 ed.), § 426; 1 Story, Eq. Jur. § 326; *Brown* v. *Rathburn*, 10 Or. 158; *Griffeth* v. *Moss*, 94 Ga. 199 (21 S. E. 463); *Kirkpatrick* v. *Howk*, 80 Ill. 122; *Stewart* v. *Davis' Executor*, 18 Ind. 74; *Bonney* v. *Bonney*, 29 Iowa, 448; *Barrow* v. *Shields*, 13 La. Ann. 57; *Cummings* v. *Little*, 45 Me. 183; *Ives* v. *Bank*, 12 Mich. 361; *Green* v. *Dougherty*, 55 Mo. App. 217; *Bank* v. *Colcord*, 15 N. H. 119 (41 Am. Dec. 685); *Bronson* v. *McCormick Machine Co.*, 52 Neb. 342 (72 N. W. 312); *Everly* v. *Riee*, 20 Pa. St. 297; *Wharton* v. *Duncan*, 83 Pa. St. 40; *Baker* v. *Briggs*, 8 Pick. 122 (19 Am. Dec. 311); *Loop* v. *Summers*, 3 Rand. (Va.), 511; *Payne* v. *Bank*, 6 Smedes & M. 24; *Harrison Machine Works* v. *Templeton*, 82 Tex. 443 (18 S. W. 601); *Hurd* v. *Spencer*, 40 Vt. 581; *Bank* v. *Shields*, 55 Hun. 274 (8 N. Y. Supp. 298).

In *Bank* v. *Baker*, 4 Metc. (Mass.), 164, Mr. Justice WILDE, discussing this question, says : "It is a settled rule in equity that if the creditor, by a binding agreement with the principal debtor, extends the time of payment without the consent or privity of the surety, such an agreement will *ipso facto* discharge the surety, although the surety does not thereby sustain any injury, and although he may derive an actual benefit from the extension of the time of payment : Chitty, Cont. (5 Am. ed.), 529; 2 Keen, 644. This rule, however, is founded on the consideration that the extension of time is a new contract, to which the surety is not a party, and for the performance of which, therefore, he is not bound. But this reason does not apply to a case where the creditor relinquishes securities to the benefit of which the surety is entitled. In such a case, the surety is not discharged absolutely, without regard to the value of the securities. He is entitled only to be exonerated to the extent of the value of them." In *Neff's Appeal*, 9 Watts & S. 36,

SERGEANT, J., illustrating the principle here announced, says : "The ground upon which the relinquishment or negligent losing of a security taken of the principal debtor by the creditor for the whole or part only of the debt is held to be a release of the surety, either for the whole or *pro tanto*, as the case may be, is that the surety, upon payment of the debt to the creditor, is entitled to the benefit of all securities which the creditor has that he could have rendered available against the principal debtor ; and if any of these securities have become lost, or have become lessened in value, in consequence of the neglect or default of the creditor, the surety's liability to the creditor will be diminished to that extent : Vide Pitm. Sur. 113, 114 ; 40 Law Lib. 86 ; Theo. Prin. & Sur. 84, 85, *et seq.*; *Com.* v. *Miller*, 8 Serg. & R. 452, 457, 458 ; 2 Swanst. 189. When the real value of the security lost by the neglect of or given up by the creditor is capable of being ascertained with certainty, and it is less than the amount of the debt, it would not only be contrary to reason to extinguish the liability of the surety entirely, as a diminution equal in extent to the value of the security given up or lost is amply sufficient to protect him from any loss that could accrue from his not obtaining such security, which is the utmost that he can with reason claim, but it would likewise be repugnant to the ground or principle upon which the surety has a right to claim a discharge from his liability as such."

3. The claim for indemnity on the part of the surety who has been compelled to pay the debt of his principal is founded upon the doctrine of natural equity which arises at the time the relation is entered into, and is consummated when the debt is paid by the surety, who is at once subrogated to all the rights and remedies of the creditor, and entitled to have all the original and

collateral securities which the creditor held against the principal debtor transferred to him : *Wayland* v. *Tucker*, 4 Grat. 267 (5 Am. Dec. 76); *Atwood* v. *Vincent*, 17 Conn. 575 ; *Lewis* v. *Palmer*, 28 N. Y. 271 ; *York* v. *Landis*, 65 N. C. 535. If Means had discharged the note for the payment of which his equitable interest in the land was hypothecated, he would have been subrogated to all the rights of the bank, and entitled to have the whole estate in the premises conveyed, and said stock transferred to him (*Keel* v. *Levy*, 19 Or. 450, 24 Pac. 253); in which case he would have been obliged to indorse upon the note the value of such stock. The bank sold the stock for the account of L. B. Seeley, and indorsed the value thereof upon the note without altering the terms of the original contract ; and, as the value of the stock has declined since such sale was consummated, the surety sustained no injury, and hence the decree is affirmed.

AFFIRMED.