## SOUTHERN TRUST CO. v. VAUGHN et al.

(Circuit Court of Appeals, Eighth Circuit. December 19, 1921.)

No. 5605.

1. **Principal and agent** ⊚═23 (1)—**Individual having notice of defenses held not the agent of the bank.**

In an action by a bank on a note purchased by it, evidence *held* to show that the individual through whom the note was purchased was the agent of the previous holder of the note, and not of the bank, so that the bank was not chargeable with his knowledge of defenses.

2. **Bills and notes** ⊚═356—**Bank had not given value for note merely by crediting account therewith.**

A bank does not become a purchaser for value of a note merely by giving credit on its books for the purchase price thereof, but is entitled to avoid defenses only to the extent it had actually paid out the money prior to acquiring notice of the defenses.

⊚═For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes
277 F.—10

**3. Compromise and settlement ⊚⇒16(1)—Fraud in sale of property held settled before notes were given.**

Where the parties to a contract for the purchase and sale of a mine discussed at the time the purchase-money notes were executed alleged fraudulent representations by the vendor when the sale was made several months before, and as a result of the discussion a compromise was effected and the notes given in accordance with its terms, the fraudulent representations were thereby settled, and could not be set up as a defense to the notes.

**4. Bills and notes ⊚⇒489(3)—Fraudulent representations not alleged in answer cannot be a defense.**

In an action on notes given for the purchase price of a mine, where the answer alleged misrepresentations in the sale of the mine, but the evidence showed claims for such misrepresentations had been compromised before the notes were given, the makers of the notes could not set up as a defense to recovery thereon misrepresentations by the vendor at the time the notes were executed which they had not alleged in their answer.

**5. Principal and surety ⊚⇒75—Breach of promise made a condition to liability is defense to action by indorsee.**

Where the recording by the payee of a mortgage given to secure the payment of a note was expressly made a condition precedent to liability on the note of those who signed it as sureties, and who were relying on the security of the mortgage, the failure to record the mortgage by the payee would constitute a good defense to an action on the note by a subsequent indorsee.

**6. Principal and surety ⊚⇒115(2)—Negligent failure to record mortgage bars recovery from surety except by holder in due course.**

Where the principal maker of a note gave the payee a mortgage on its property to secure payment thereof, the negligent failure of the payee to record the mortgage, whereby the security for the note was lost, would bar recovery against those liable on the note as sureties to the extent that they were damaged, if, or to the extent that, plaintiff was not a holder in due course.

In Error to the District Court of the United States for the Eastern District of Oklahoma; R. L. Williams, Judge.

Action by the Southern Trust Company against the Yellow Rose Mining Company, T. H. Vaughn, and others on a promissory note. Judgment for plaintiff against the corporate defendant only, and plaintiff brings error. Reversed, with directions to grant new trial.

Malcolm E. Rosser, of Muskogee, Okl., and T. M. Seawell, of San Antonio, Tex. (Frank Pace, of Little Rock, Ark., George S. Ramsey, of Muskogee, Okl., Edgar A. De Meules, of Tulsa, Okl., and Villard Martin, of Muskogee, Okl., on the brief), for plaintiff in error.

L. C. Andrews, of Pauls Valley, Okl. (J. R. Cottingham and S. W. Hayes, both of Oklahoma City, Okl., and J. T. Blanton and Monroe Osborn, both of Pauls Valley, Okl., on the brief), for defendants in error.

Before HOOK, Circuit Judge, and COTTERAL and JOHNSON, District Judges.

JOHNSON, District Judge. Plaintiff in error brought suit in the court below against the Yellow Rose Mining Company and the de-

fendants in error, directors of the company, upon a promissory note dated May 1, 1917, executed by said company and defendants in error, for the sum of $15,000, payable on or before six months after date to the order of one J. L. McCarty. The plaintiff claims to be the holder of the note in due course.

The defendants in error and the company as a defense set up in their answer with some particularity that in February, 1917, J. L. McCarty, by fraudulent representations, had induced the company to purchase certain mining property for a consideration of which the principal sum mentioned in the note in suit was a part; that the company as principal and the defendants in error as sureties had signed said note relying upon the representations so made by said McCarty; that the company by reason of said false representations had been damaged in excess of the amount of the note.

As a defense personal to them the defendants in error alleged that on the 1st day of May, 1917, the company, being indebted to J. L. McCarty for the balance unpaid of the purchase price of the mining property above mentioned agreed to make and deliver a note for such balance payable in six months from date; that they the answering defendants signed said note as sureties at the request of McCarty the payee on the condition that he would secure from the company a mortgage upon all of its property, cause said mortgage to be recorded, and, in case the note was not paid by the company, foreclose the mortgage, sell the property described therein, apply the proceeds on the note, and look to and require the answering defendants to pay the deficiency, if any, only. Defendants then allege that the mortgage was executed by the company; that McCarty received it, but failed to have it recorded as he had agreed to do; that as a result of a conspiracy entered into between him and the Miners' & Citizens' Bank the property described in the mortgage was seized and sold for debts due to the bank, and the lien of the mortgage lost.

As a second defense personal to them the defendants in error alleged, in effect, that by reason of the failure of McCarty to preserve the lien of the mortgage they had been deprived of the benefit which would have inured to them by subrogation upon the payment of the note by them. By reason of their several defenses they prayed judgment that plaintiff take nothing by its complaint.

At the trial plaintiff obtained judgment against the company, but was defeated as to the other defendants. Plaintiff brings error, and has assigned numerous rulings of the trial court as error which will be referred to more specifically hereafter.

The plaintiff acquired the note in this way: J. L. McCarty, the payee, after he had received the note indorsed it to McCarty & Angel, a firm in which he was a partner. Thereafter he applied to the Miners' & Citizens' Bank of Yellville, in the state of Arkansas, to discount the note for the firm. Under the banking laws of Arkansas a bank is not permitted to loan in excess of 30 per cent. of its capital stock to any single borrower. The capital stock of the Miners' & Citizens' Bank was $20,000; it was therefore unlawful for it to discount the note. J. F. Carson, the cashier of the bank, however, agreed, upon his

next visit to Little Rock, to attempt to discount the paper for McCarty in some of the larger banks of that city. Early in October, 1917, he went to Little Rock and applied to the plaintiff to discount the note. After some inquiry as to the financial standing of the signers of the note, the plaintiff bank agreed to take the paper at its face value with accrued interest. It was then discovered that the note had not been indorsed by McCarty & Angel, and it was agreed between Carson and the officer of the plaintiff bank with whom the business was being conducted that Carson should take the note back with him, secure the indorsement of McCarty & Angel upon it, have the purchase price of the note placed to the credit of McCarty & Angel on the books of the Miners' & Citizens' Bank, and forward the note to the plaintiff at Little Rock; and it was agreed upon its receipt by the plaintiff the purchase price of the note would be placed to the credit of the Miners' & Citizens' Bank upon the books of the plaintiff bank. This program was carried out. The indorsement of McCarty & Angel was secured by Carson; the purchase price of the note was placed to their credit by the Miners' & Citizens' Bank on the 11th of October; the note was transmitted to the plaintiff bank at Little Rock and credit given by plaintiff to the Miners' & Citizens' Bank on October 15th. There was considerable correspondence between the plaintiff and the Miners' & Citizens' Bank in reference to the note. This correspondence was routine in form and referred to the note as if it had been purchased from the Miners' & Citizens' Bank. The defendants make this correspondence the basis for the contention that the note was purchased by the plaintiff from the Miners' & Citizens' Bank. They also claim that, in securing the indorsement of McCarty & Angel on the note by Carson and in crediting the account of McCarty & Angel with the purchase price of the note by the Miners' & Citizens' Bank, Carson and the bank were acting as agents of the plaintiff. They argue as a conclusion from these premises that the plaintiff is chargeable with notice of the defense set up in the answer of the defendants respecting the failure of McCarty to record the mortgage, in that they claim there is testimony tending to show that Carson, and through him the bank, had been informed of the agreement of McCarty to record the mortgage and knew that he had failed to do so.

[1] We have read the testimony in the record carefully and are unable to see any ground for these contentions of the defendants. The relation of the parties must be determined by the facts as they are shown to have existed at the time the note was purchased, and, as we view it the subsequent correspondence between the banks, relied upon by the defendants to prove their contentions, was of a routine character and without probative value when considered in connection with the undisputed evidence showing the situation of the parties at the time the note was purchased. Neither the Miners' & Citizens' Bank nor its cashier, Carson, was ever at any time in the course of this transaction the agent of the plaintiff. Indeed, we do not think that Carson was in the transaction representing his bank at all. He was acting in his individual capacity and was the agent of McCarty & Angel. His bank did not own the note; it could not legally acquire it. Carson

did not represent to the plaintiff that his bank owned the note, but, on the contrary, he expressly stated that his bank did not own and could not handle the note. The knowledge or information of Carson, whatever it may have been respecting this defense of the defendants, under the uncontradicted evidence in the case could not be imputed to the plaintiff, and this question should not have been submitted to the jury.

[2] On the other hand, the contention of the plaintiff that it became a purchaser for value when and as soon as the purchase price of the note had been credited on the books of the banks is not well taken. These were mere book transactions. The plaintiff bank became a purchaser for value only when and to the extent that the purchase price of the note was paid, directly or indirectly, to McCarty & Angel before notice to it of the defense of the defendants in error to the note. Thompson v. Sioux Falls National Bank, 150 U. S. 231, 14 Sup. Ct. 94, 37 L. Ed. 1063; Dresser v. Missouri, etc., R. R. Co., 93 U. S. 92, 23 L. Ed. 815; National Bank of Commerce v. Armbruster, 42 Okl. 656, 142 Pac. 393; Oppenheimer v. Radke & Co., 20 Cal. App. 518, 129 Pac. 798.

When, if at all, the plaintiff received such notice, or what sum, if any, had been paid on account of the note, we do not, upon the record before us, deem it proper to attempt at this time to determine.

[3] The record shows that the note sued upon was given after J. L. McCarty and the defendants in error, the directors of the company, had thoroughly discussed the false representations alleged to have been made by McCarty at the time of the purchase of the property in February, 1917. The outcome of this discussion was a compromise of the matter by which McCarty surrendered a block of the stock of the company and made other concessions to it, whereupon the company and the defendants in error executed the note in suit. Whatever fraudulent representations may have been made by McCarty at the time of the original transaction in February, were unquestionably waived by this compromise and settlement. The submission to the jury of the defense based upon the transaction with McCarty in February was error.

[4] In the progress of the trial there was testimony received tending to show that McCarty at the time of the settlement in May made certain other representations in respect to the value of the mining property which were false, and that defendants in error relied upon these representations in signing the note sued upon. No such issue is made in the answer of the defendants. This defense against the note was improperly injected into the case, and it was error for the court under the pleadings to submit it to the jury for their consideration.

[5] If the recording of the mortgage by McCarty was by express agreement between him and the defendants in error made a condition precedent to their liability upon the note, then his failure to record the mortgage, if he received it, constituted a good defense to the action. Rice v. Fidelity & Deposit Co., 103 Fed. 427, 43 C. C. A. 270.

[6] If there was no such agreement, it was nevertheless the duty of McCarty to record the mortgage, if he received it, if that was neces-

sary to prevent the loss of the lien upon the property covered by the mortgage. The loss of the lien of the mortgage through the negligence of McCarty in failing to record it, if he had it in his possession, would prevent a recovery on the note against the defendants in error to the extent that they were damaged, if, or to the extent that, the plaintiff was not a holder in due course. Evans v. Kister, 92 Fed. 828, 35 C. C. A. 28; Denny v. Seeley, 34 Or. 364, 55 Pac. 976; 32 Cyc. 216; Brandt on Suretyship (3d Ed.) § 480, vol. 1.

The other errors assigned do not require special notice.

As against the defendants in error the judgment is reversed, and the court below directed to grant a new trial.

Judge HOOK participated at the hearing of this cause, but died before a conclusion was reached and the opinion prepared.