**SAINT PAUL INSURANCE COMPA-NIES, a corporation, Plaintiff,**

v.

**The FIRST NATIONAL BANK AT ANT-LERS, a corporation, Willis Greesom, d/b/a Montgomery County Auction, Winifred Owen and Joe Hathoot, d/b/a Owen Brothers Livestock Auction Company, A. A. Albert, d/b/a Albert Commission Company, Robert Wood and Odus L. Caldwell, Defendants.**

Civ. No. 5595.

United States District Court
E. D. Oklahoma.
April 29, 1966.

Looney, Watts, Looney, Nichols & Johnson, Oklahoma City, Okl., for plaintiff.

Joe Stamper, Antlers, Okl., for defendants, First Nat. Bank of Antlers and Robert Wood.

Ed Shipp, Idabel, Okl., for defendant Roy Acord.

Bill Moore, Atoka, Okl., for defendants A. A. Albert and Bessie Albert.

Carl E. LeForce, Idabel, Okl., for defendant Owen Bros.

Jerry C. Witt, Witt & Witt, Mt. Ida, Ark., and C. T. Sanders, Kansas City, Mo., for Willis Greeson d/b/a Montgomery County Auction.

DAUGHERTY, District Judge.

This memorandum opinion is concerned only with the controversy in the above case between the defendant and cross-claimant, The First National Bank at Antlers, a corporation, and the defendant, A. A. Albert, d/b/a A. A. Albert Commission Company. This controversy is presented to the Court by the cross-claim of the First National Bank at Antlers, hereinafter called Bank, against the defendant A. A. Albert d/b/a A. A. Albert Commission Company, hereinafter called Commission Company, and the answer of said Commission Company to said cross-claim. All other issues involved in this case have been previously decided by the Court's Findings of Fact and Conclusions of Law filed herein and Partial Judgment entered thereon.

The Court makes Findings of Fact and Conclusions of Law regarding the controversy between the Bank and Commission Company as follows:

On May 10, 1962, the defendant Commission Company gave Odus L. Caldwell, hereinafter called Caldwell, a check in the amount of $5000.00. Caldwell had an account with the defendant Bank and on May 11, 1962, Caldwell endorsed and presented the above check to the defendant Bank for deposit. Thereafter, and in due course, said check was forwarded to the Atoka State Bank, drawee bank of the Commission Company at Atoka, Oklahoma, for payment. Payment having been stopped on the check by the Commission Company, the same was not

paid by the drawee bank to the defendant Bank. The defendant Bank claims that it was a holder in due course with reference to said check inasmuch as it had paid out the amount represented by said deposited check before it received any notice of infirmity or stop-payment thereon and that in such circumstances it is entitled to recover the amount of the check from the Commission Company, the drawer thereof. However, the Bank states that it subsequently received from Caldwell for credit on said check the amount of $1784.00 placed by Caldwell in his bank account with the Bank and an additional $1000.00 received by the Bank directly from Caldwell for application on said check. The Bank, therefore, claims that the defendant Commission Company is indebted to it for the difference between the said $5000.00 check and the amount of $2784.00 received from Caldwell and credited on said check and requests judgment against the Commission Company in the amount of $2216.00 plus interest at the legal rate from May 12, 1962.

The defendant Commission Company, by way of answer to the cross-claim of the Bank, asserts that it had good cause to stop payment on the check for the reason that the cattle received from Caldwell for the same did not, in fact, belong to Caldwell, and that the true owners were claiming title to the cattle. Further, the Commission Company claims that any sums paid out following the deposit of said check with the Bank were not in reliance on said check but were paid out on checks either presented prior to the deposit of this check or checks presented after the Bank had received notice of stop-payment.

■ The basic rule of law to be applied in this controversy is that a bank is a holder in due course with reference to a check deposited to the account of a customer only to the amount paid out by the bank or withdrawn by means of checks drawn by the customer on the proceeds of the item deposited before the bank received notice of infirmities or stop-payment regarding the check. 48 O.S.A. § 122, 48 O.S.A. § 125 and 48 O.S.A. § 129; Iola State Bank v. Kissee, (Okl.1961) 363 P.2d 368;[1] Southern Trust Co. v. Vaughn, et al., (C.A.8 Okl.) 277 F. 145, 59 A.L.R.2d 1173.

■ It is necessary to trace the banking activities regarding the Caldwell account from May 10, 1962, through May 19, 1962, in order to decide this controversy. On May 10, 1962, Odus Caldwell deposited with the Bank a check dated May 9, 1962, in the amount of $1350.17 payable to his order and drawn

1. This case provides as follows:
"In considering this contention we find the general rule to be stated by the author in the annotation found in 59 A.L.R.2d 1181, wherein it is said:
'Although the mere crediting by a bank of the proceeds of a negotiable instrument to the account of a depositor does not generally constitute a giving of value so as to constitute the bank a holder in due course, it has almost universally been held or stated that when the bank permits its depositor to withdraw completely or otherwise employ the proceeds of the item deposited prior to receipt of any notice that payment has been stopped or that the instrument is defective, the bank has given value for the negotiable paper and is a holder in due course.'
and lists thirty four states, including Oklahoma, as following this rule. The Oklahoma case cited is Alamo National Bank of San Antonio, Tex. v. Dawson Produce Co., 78 Okl. 235, 190 P. 393, wherein we held:
'Where a bank purchases a bill of exchange from the drawer before maturity, and gives the drawer credit on his deposit account in the bank for the face value of the bill, such transaction only creates the relation of debtor and creditor, and does not constitute the bank a purchaser or holder for value; but if the deposit is drawn or checked out before the bill is accepted, the bank then becomes a purchaser for value.'
In this connection see also First National Bank of Claremore v. Stallings, 74 Okl. 180, 177 P. 373; National Bank of Commerce v. Ambruster, 42 Okl. 656, 142 P. 393; and A. Morrison & Co. v. Farmers & Merchants' Bank of Los Angeles, 9 Okl. 697, 60 P. 273."

on the Idabel National Bank of Idabel, Oklahoma, by the Owen Brothers Livestock Auction Company, hereinafter called Owen Brothers. Other checks deposited on this day were honored but the said Owen Brothers check was not paid, as payment thereon was stopped by Owen Brothers. The Bank ledger shows that at the end of the banking day on May 10, 1962, by reason of checks drawn on his account in said Bank the balance in the Caldwell account was $183.84. On May 11, 1962, Caldwell deposited the above mentioned $5000.00 check from the Commission Company together with another check listed on the same deposit slip but below and after the $5000.00 deposit, said other check being in the amount of $1242.76, and which was paid. At the end of the banking day of May 11, 1962, the Caldwell balance was $1663.86, and at the end of the banking day of May 12, 1962, the Caldwell balance by reason of the clearance of other Caldwell checks on May 12th was in the amount of $1305.97. No deposits were made on May 12, 1962. May 13, 1962, was Sunday.

On May 14, 1962, Mrs. Caldwell presented checks totaling $7422.96 to the bank for deposit. The Bank, however, did not accept these checks for deposit but received them only as an entry for collection. None of the checks included in this deposit were paid due to stop-payment orders except one check in the amount of $150.00 which was paid on May 19, 1962, and on said date was credited to the Caldwell account as a deposit, bringing the account balance to $1455.97 represented by said $150.00 deposit and the $1305.97 bank balance on hand since the end of the banking day of May 12, 1962.[2] It was the testimony of the Bank that the Caldwell account was frozen on the morning of May 14, 1962, as far as honoring any of Caldwell's checks after that time and that no deposits were made to his account until the above mentioned $150.00 deposit. The reason given for freezing the account was that Caldwell was seriously injured in a truck accident on the night of May 12, 1962.

We are thus concerned with two dishonored checks, one in the amount of

---

2. From the Bank ledger sheet the following is a simple recap of actions regarding the Caldwell account from May 9, 1962, until the Bank credited the $150.00 deposit on May 19, 1962:

| 1962 | Deposits (In) | | Caldwell checks (Out) | Caldwell Balance (end of day) |
|---|---|---|---|---|
| 5/9 | Omitted | | Omitted | $4,454.10 |
| 5/10 | $ 156.50 | paid | | |
| | 1350.17 | payment stopped | $5896.73 | 183.84 |
| | 119.86 | paid | | |
| | $1626.53 | | | |
| | – .06 | | | |
| | $1626.47 | | | |
| 5/11 | $5000.00 | payment stopped | $ 125.00 | |
| | 1242.82 | paid | 4600.16 | |
| | $6242.82 | | · 37.58 | |
| | – .06 | | | |
| | $6242.76 | | | 1,663.86 |
| 5/12 | –0– | | 150.00 | |
| | | | 60.00 | |
| | | | 22.00 | |
| | | | 125.89 | 1,305.97 |
| 5/13 | Sunday | | | |
| 5/14 | –0– | | –0– | 1,305.97 |
| | ($7422.96 Entry for Collection) | | | |
| 5/19 | $ 150.00 (from 5/14 Entry for Collection) | | | |

$1350.17 signed by Owen Brothers and deposited on May 10, 1962, and the second in the amount of $5000.00 signed by the Commission Company and deposited on May 11, 1962.

As stated above it appears from the evidence that on the morning of May 14, 1962, the Bank froze the account of Odus Caldwell because of his being seriously injured in an accident on the previous Saturday evening of May 12, 1962, and paid out no further checks on said account written by Caldwell. Further, that the Bank refused a large check deposit that morning by Mrs. Caldwell and only received the checks for collection. The Bank is not definite as to when it received the notice of stop-payment on the $5000.00 check except that it received telegraphic notice of stop-payment on said check from the First National Bank in Dallas, Texas, on May 17th. Mr. Albert for the Commission Company testified he gave verbal telephone notice to the Bank some time during the late afternoon of May 14, 1962, that he had stopped payment on the $5000.00 check. The evidence was not definite and there was nothing in writing regarding the time the Bank received notice of stop-payment on the $1350.17 Owen Brothers check except the testimony of the Executive Vice President of the Bank to the effect that in the normal course of business the Bank would have received telephone notice of such stop-payment order some time during the day of May 14, 1962. This is based on the fact that the Bank mailed this check to the State National Bank of Denison, Texas, on May 10, 1962; that the State National Bank of Denison, Texas, by an endorsement under date of May 11, 1962, forwarded the check to the Idabel National Bank of Idabel, Oklahoma, on which it was drawn; that the Idabel Bank could have received the check as early as Saturday, May 12th, and certainly not later than Monday, May 14, 1962 and with stop-payment directions from Owen Brothers the Idabel Bank would have telephoned the stop-payment order as early as May 12, 1962, and not later than May 14, 1962, to the Denison Bank, which would have followed the same procedure on the same day to the Antlers Bank, the defendant herein.

The annotation at 59 A.L.R.2d, Section 7, at page 1190, which treats with when a bank becomes a holder in due course with reference to negotiable paper deposited by a customer, reads as follows:

"A majority of the courts considering the question have applied the rule of 'first money in, first money out,' that is to say, the first item withdrawn from the account is applied against the first item or items deposited, and successive withdrawals are similarly applied. Thus, according to the above rule, as soon as the proceeds of the deposited item have been entirely withdrawn by the depositor, the bank has given value for the instrument and is a holder in due course."

Applying the majority rule, it is evident without doubt from the Bank's records that between the two dishonored checks the one in the amount of $1350.17 was the first deposit in and was completely paid out by Caldwell checks sometime during the day following deposit or May 11, 1962. This check then being deposited to Caldwell's account on May 10, 1962, and being completely withdrawn by Caldwell checks on May 11, 1962, the Bank became a holder in due course as to this check on May 11, 1962, and prior to the earliest time it could have received a stop-payment notice thereon.

Then on May 11th, Caldwell deposited the $5000.00 check drawn by the Commission Company, and in sequence of deposit on the same day Caldwell thereafter deposited a check in the amount of $1242.76. No other deposits to the Caldwell account were made until May 19, 1962, when a check received by the Bank for collection in the amount of $150.00 was paid and then deposited. Checks drawn by Caldwell beginning on May 11, 1962, the date of the deposit of the $5000.00 check and the $1242.76 check, reveals that moneys paid out by the Bank on Caldwell

checks on the basis of "first money in, first money out" exhausted all of the $5000.00 check except for the sum of $63.21 by the end of the banking day of May 12, 1962. This amount of $63.21 and the subsequent deposit of $1242.76 then constituted the balance in the Caldwell account at the end of the banking day on May 12, 1962, in the amount of $1305.97. This was all accomplished with this balance remaining on paper in the Caldwell account prior to the earliest time the Bank could have received a stop-payment notice on the $5000.00 Commission Company check during the afternoon of May 14, 1962.

59 A.L.R.2d, Section 5, at page 1184, provides:

> "Where only a part of the sum credited to the depositor's account has been withdrawn, it has usually been held that the bank permitting such withdrawals is a holder in due course to the extent thereof."

Thus, applying the "first money in, first money out" rule as stated above and the pro tanto rule as stated above it becomes evident that the Bank became a holder in due course for the entire amount of the $1350.17 check on May 11, 1962, and thereafter on May 12, 1962, became a holder in due course with reference to the $5000.00 check to the extent of $4936.76. The balance on hand on paper in the Caldwell account when stop-payment notices were received by the Bank was in the amount of $63.21 which was not withdrawn and paid out by the Bank on Caldwell checks on the $5000.00 deposit and the subsequent deposit of $1242.76 for a total of $1305.97.

Since the Bank honored no Caldwell checks on or after May 14, 1962, and received no deposits until the $150.00 deposit entered May 19, 1962, the Bank from May 14th until May 19th was in the position of having two dishonored checks, one in the amount of $1350.17, of which the Bank was a holder in due course for the entire amount, and a second check subsequently deposited and partially paid out on, of which the Bank

was a holder in due course in the amount of $4936.79. The Bank also had on May 14, 1962, a balance of $1305.97 in the Caldwell account, which was a valid balance, however, only on the basis that the $1350.17 check which had been deposited and the $5000.00 check which had been deposited would both be honored by the drawers. These checks, however, were not honored and the Bank then had the sum of $1305.97 which represented on paper the non-withdrawn part of the $5000.00 check and the last deposit of $1242.76.

It is the finding and conclusion of the Court that on May 14, 1962, and subsequent thereto, to and including May 19, 1962, the Bank was entitled to apply this deposit on hand to the earliest check deposited of which it was a holder in due course for value and upon which payment had been stopped. This is what the Bank elected to do and actually did on May 19, 1962, and which the Court finds to have been a proper banking action. It is apparent that on May 19, 1962, the Bank received the first Caldwell deposit and took the first withdrawal action on the Caldwell account since May 12, 1962. On May 19, 1962, the Bank had the two dishonored checks, to which it could apply credit in the order of priority based on the dates of deposit and withdrawal and to the extent that the Bank was a holder in due course. The Court, therefore, further finds and concludes that under the circumstances in this case the actual dates and hours the Bank received the stop-payment notices on the $1350.17 check and the $5000.00 check, are immaterial and not controlling, inasmuch as the Bank froze the account before either stop-payment notice was received and then did not disburse anything from the Caldwell account until May 19, 1962, when without dispute the Bank then had notice of stop-payment on both checks and the ability to determine the priority between the two checks regarding entitlement to any funds in the hands of the Bank belonging to Caldwell.

The Court knows of no case and no case has been brought to its attention

which provides that by operation of law some banking action automatically took place herein with reference to the balance on hand in the Bank at the time of receipt of a stop-payment notice. It would seem appropriate under the circumstances here that the Bank could and should freeze the account and take no definite action until the air had cleared and then proceed on a basis of established priorities.

Accordingly, the Bank being a holder in due course of the $5000.00 Commission Company check to the extent of and in the amount of $4936.79 and having received for credit thereon from Caldwell only the sum of $2784.00, the Bank is now entitled to look to and call on the Commission Company as drawer of the check for the difference, or the amount of $2152.79, for which amount judgment should be entered in favor of the Bank and against the Commission Company with interest thereon at the legal rate from May 12, 1962.

Counsel for the Bank will prepare an appropriate judgment based on the foregoing for the signature of the Court.