## DRURY J. FIELDS v. WILLIAM B. SHERRILL.

MORTGAGE LIENS; *Equity, Priority.* In August 1872, F. and H. executed a joint note to G., payable in one year. On the face of the note, each appeared as principal. The note was in fact given for borrowed money, and the money was borrowed for F., and received and used by him. To secure this note H. gave a mortgage on certain real estate, which mortgage was duly recorded. In September 1873, F. handed to H. the amount of the loan, and took from him a receipt therefor, in which the latter promised to pay the note; but instead of then paying it, he obtained an extension of a year, by the payment of advance interest and a bonus. In January 1874, H. borrowed money of S., and gave a note secured by a mortgage on the same and other property. In September 1874, F. paid to G. the amount then due on the note, and took an assignment without recourse. *Held,* that at first F. was to be regarded as the principal debtor, and that a payment by him to the payee of the note, prior to September 1873, would have discharged both note and mortgage absolutely; but that by the payment in September 1873, from F. to H., the promise of the latter to pay the note, and the obtaining of a year's extension of the time of payment, H. became in equity the principal debtor; and that as all this took place before the note and mortgage to S., the latter's rights were in no way prejudiced, and that F. by his subsequent payment to G., and the assignment of the note, was entitled to hold that note and mortgage as a valid and prior lien upon the mortgaged premises.

*Error from Bourbon District Court.*

THE only question in this case is, whether *Fields,* or *Sherrill,* holds the prior lien on certain real property. The district court, at the September Term 1875, found and determined this question in favor of *Sherrill,* and *Fields* brings

the record here.   The opinion contains a statement of the facts.

*McComas & McKeighan,* for plaintiff in error, contended that a surety who pays the debt of his principal is entitled to an assignment of the instrument paid, and the liens and securities held by the creditor are in equity kept alive for the benefit of the creditor; 1 Story's Equity, §§ 449, 522; 46 Mo. 557.   That one of two or more joint obligors is surety, can be shown by parol; Gen. Stat. 720; 5 Kas. 483.   The facts furnish much stronger reasons why Fields should be protected, and the Giles mortgage kept alive, than if he was a vendor to Hawkins with an agreement of Hawkins to pay off the mortgage; yet in such a case the mortgage would be kept alive.   1 Hilliard on Mortgages, 544, 546; 34 Me. 299; 9 Barr, 498.; 51 N. Y. 333.

*R. F. Buller,* for defendant in error.

The opinion of the court was delivered by          .

BREWER, J.: This was a suit brought by William B. Sherrill, defendant in error, against A. Hawkins and one John Campbell, to recover judgment on a note of $1,350, dated January 9th 1874, secured by mortgage on certain real estate in Bourbon county, executed by A. Hawkins and Martha E. Hawkins, and recorded the same day.   The plaintiff in error was made a defendant on his motion, and filed his answer and amended answer, as disclosed by the record, setting up a mortgage-lien for $810.96 against Hawkins and his wife, which was allowed him by the court, and is not here for review; also, setting up a note of $1,054.70, dated 31st August 1872, executed by plaintiff in error, Drury J. Fields, and A. Hawkins, and secured by mortgage recorded Sépt. 7th 1872, on a part of the real estate described in Sherrill's mortgage, viz., sec. 1, township 25, range 25, Bourbon county.   The payee of this note, a Mrs. M. C. Giles, received the full amount thereof on Sept. 3d 1874 from one of the

makers, the plaintiff in error; and the question and the only question in the case was, whether such receipt operated as a payment of the note, and a discharge of the mortgaged premises from the lien thereof. The district court found that it was a payment, and that the mortgage-lien was gone, and gave Sherrill's mortgage priority. The facts in reference to this, as they appear from the testimony, are substantially these: The note was, on the face of it, the joint note of Fields and Hawkins. While Fields' name appears first, there is nothing to indicate that either was surety. The mortgage security was given alone by Hawkins. The note was given for borrowed money. The money was borrowed for the use of Fields. He first spoke to the payee's agent about the loan, and told him that Hawkins would not take the money. He (Fields) had no deed for his land, and that was the reason why he did not give the security himself. Hawkins agreed to furnish the security, and let Fields have the money. A check for the money was given to Hawkins, who turned it over to Fields, and the latter obtained the money thereon and used all except the sum of $100, which a few days thereafter he returned to Hawkins. During the summer and fall of 1873 he also returned to him an amount equal to the amount he had retained of the proceeds of the check, and took this receipt:

"Fort Scott, Sept. 1, 1873.

"Received of D. J. Fields ten hundred and fifty-four dollars & seventy cents, ($1054.70,) for which I promise to pay a promissory note indorsed by D. J. Fields and myself, and given in favor of Mrs. M. C. Giles.     A. Hawkins."

Hawkins did not pay said note, but by payment of interest in advance, and a bonus, obtained an extension of the loan for a year. In September 1874, the note still remaining unpaid, Fields paid it and took an assignment without recourse. Now while both the payee of this note, and her agent, testify that they regarded Hawkins as the principal, and Fields as only surety, yet we think that in the inception of this loan, and as between Fields and Hawkins, the finding of the court that Fields was the principal was unquestionably cor-

rect. Suppose, that after having received the proceeds of this loan, Fields had paid the same over to Mrs. Giles, and taken an assignment of the note and mortgage: can it be claimed for a moment that he could have held them as valid securities against Hawkins, and enforce their collection from him? Yet if Hawkins was principal, and he merely security, he could. The reverse was actually the case. Hawkins could have paid the note, and claimed the benefit of it as against Fields — for Fields was in fact the party who desired the loan, for whom it was made, and who received the proceeds of the loan. Whatever form then the transaction took, and whatever might be the rights of the payee or others, as between Fields and Hawkins the former was the principal debtor, and his payment of the note canceled it and discharged the mortgage.

What effect had the return of the amount of the note by Fields to Hawkins, and its extension by the latter for another year, upon the subsequent payment by Fields? This is really the difficult part of the case. On the one hand it is claimed that upon the face of the papers each maker was equally and jointly liable as principal, and that *prima facie* a payment by either would discharge the note and mortgage; that if we look back of the face of the papers, we find that Fields was really the principal and Hawkins the surety, and that this relation, once established, must be held to remain; that the makers of the note, the debtors, cannot by simply passing money backward and forward between themselves, and without any knowledge or assent of the payee, the creditor, keep changing their relation to the debt, so that to-day one shall be the principal and the other the surety, and the next day the reverse. While on the other hand it is said, that the return of the money to Hawkins left him in the possession and enjoyment of the proceeds of the loan; that, by payment of advance interest and a bonus he obtained a year's continuance of such possession; that Fields had ceased to have any further benefit from the loan, while Hawkins was enjoying the full benefit of it; that as this took place before

Sherrill made his loan, he suffered no wrong by the transaction; that the record disclosed the existence of this mortgage, and that it was apparently unsatisfied; and that if Sherrill had made inquiries of the mortgagee he would have been informed that she considered Hawkins as the principal debtor, and that the note was unpaid; and that if he had made like inquiries of Fields, or Hawkins, the exact facts would have been told him, so that it is perfectly fair to presume that if he was content to make his loan upon a second mortgage, he has no right to complain if it is now adjudged to be only a second mortgage, and that it would be unjust to Fields who has twice paid this note to deprive him of any recourse upon the mortgage security. The latter view seems to us to be the most just and equitable, and not to contravene any settled legal principle. It may be true, as counsel for defendant in error say, that it is very doubtful whether Fields in fact ever returned any such amount to Hawkins; but we must take it that he did, as the court so found. The matter can be inquired into further on the rehearing.

The judgment of the district court will therefore be reversed, and the case remanded with instructions to grant a new trial.

All the Justices concurring.