[ Filed July 1, 1890. ]

## S. A. KEEL, RESPONDENT, *v.* F. LEVY, APPELLANT.

PLEADING—FRAUD.—Unless fraud or illegality be pleaded and proven by a preponderance of the evidence, the writings executed by the parties must be enforced according to their legal import.

FRAUD—PROOF OF.—Fraud is a matter of fact which must be proven; it is never presumed. It may be established by circumstances; but the circumstances relied upon must be of such a satisfactory character as to convince the mind of the trier of the fact that the transaction was a sham and not what it purports to be.

MERGER—QUÆRE.—Whether the holder of a note secured by a chattel mortgage who caused the mortgaged property to be attached on another debt due to him by the mortgagor and sold, and such mortgagee purchases the same at the sale, and there is nothing to show that he intended to keep the mortgage alive as a lien, the mortgage is merged, *quære!*

SURETY—SUBROGATION.—When the principal and surety each mortgages his own property as security for the debt of the principal, and the surety pays the debt, the principal's mortgage given to secure such debt passes to the surety by operation of law. He is subrogated to all of the rights of such creditor.

PRINCIPAL AND SURETY—SEPARATE MORTGAGES BY EACH TO SECURE PRINCIPAL'S DEBT.—Where the principal and surety have both mortgaged property to secure the debt of the principal, the surety is entitled to have the property of the principal sold first and applied in satisfaction of the debt.

CHATTEL MORTGAGE—GROWING CROP.—The lien of a chattel mortgage on a growing crop follows the grain after severance and removal and the money after sale

APPEAL from Marion county: R. P. BOISE, judge.

This suit is prosecuted by the respondent to secure a partition of certain personal property consisting mainly of grain grown upon the defendant's farm and some land leased of other parties. The grain was raised by the plaintiff and one Rickey as partners. During all of the times mentioned in the pleadings, Rickey was indebted to the defendant in a large amount of money. After the grain had been sown, Rickey executed a mortgage to one A. Grant on his interest in the grain to secure the payment of $700 which he had theretofore borrowed of Grant, under a contract that said mortgage should be executed after the grain had been sown. Afterwards, for the sole purpose of additional security for the $700 borrowed of Grant by Rickey, the plaintiff executed a mortgage on his interest, being one equal undivided third of the same crops. Plaintiff's note was for $708.50. Keel's mortgage contains the following recital: "The above note, together with the mortgage to secure the same, is given by me to said A. Grant in consideration of $708.50, loaned this day by said A. Grant to James M. Rickey at my special instance and request; and this note and mortgage is given by me to said A. Grant to secure said A. Grant the payment of the note and mortgage given this day by said James M. Rickey for said sum of $708.50 in case said James M. Rickey failed to pay on demand his said note; said note so given being dated April 2, 1888, due one day after date, principal $708.50, with interest at ten per cent per annum from date until paid, and for reasonable attorney fees; and that it is further agreed that when said Grant s claim is fully satisfied, my responsibility is to cease." After the maturity of these notes, and when they were over due, the plaintiff purchased them, as well as the mortgages, for the consideration of $710. He then caused an action to be commenced in his name against Rickey to recover a large amount which Rickey then owed him, and caused Rickey's interest in said grain to be attached, harvested by the

sheriff and then sold, at which sale the plaintiff became the purchaser. The amount of plaintiff's judgment in said action was $2,928.34 and costs, and the amount of plaintiff's bid for Rickey's interest was $1,113.50. The sheriff, after his levy under the attachment, harvested all of said crops, and his expenses and charges amounted to $1,058.79, which were paid by the defendant Levy.

*Tilmon Ford* and *Wm. H. Holmes*, for Appellant.

*J. J. Murphy*, for Respondent.

STRAHAN, J., delivered the opinion of the court.

The fact that Keel executed his note and mortgage on his one-third interest in the crops as surety for the $700 borrowed by Rickey of Grant, must be taken as established by a clear preponderance of the evidence. Such is the plain import of the mortgage made by Keel to Grant, and it is not attacked for fraud, either by the pleadings (*Misner* v. *Knapp*, 130, 135) or, directly, by the evidence. It is true the appellant refers to some of Keel's evidence on his cross-examination in relation to borrowing money, from which it is suggested an inference of fraud might be drawn, but I do not think this is enough. Nor is this evidence alone sufficient upon which to predicate any such conclusion. Fraud is a matter of fact which must be proven; it is never presumed. It is true direct evidence on the subject is rarely attainable. It n therefore, be established by circumstances; but the circumstances relied upon must be of such a satisfactory character as to convince the mind of the trier of the fact that the transaction drawn in question was a sham and not what it purported to be. The evidence relied upon by the appellant on this point falls short of that. Briefly, it is that Keel had in his possession about that time the sum of $600, and when questioned where he obtained it, the account he gave was unreasonable and improbable; hence it is insisted that the loan from Grant was really for Keel's use, and that, therefore, he is the principal debtor and Rickey

the surety.   There is a possibility that this assumption may
be true, but in questions of this nature the court cannot
act on possibilities.   Proof that is satisfactory, that which
is strong enough to overthrow the solemn writings
executed by the parties at the time, is requisite, and that
I am unable to find in this record.

2.   Treating these writings, then, for just what they
purport to be, the question, what are the rights and liabil-
ities thereby created, is presented for consideration.
Whatever rights Grant had under the mortgages were
transferred to Levy by the assignment, and he acquired
no other thereunder.   The facts, then, briefly recapitulated,
are these.   Rickey borrowed $700 of Grant and gave his
promissory note therefor, secured by a chattel mortgage
on an undivided one-third of certain growing crops; after-
wards Keel, as additional security for the same debt, made
his promissory note secured by a chattel mortgage on his
undivided one-third of the same crops.   After said notes
fell due, Levy, for the consideration of $710 paid to Grant,
purchased said notes and mortgages, and they were
assigned to him.   He then caused Rickey's interest in the
crop to be attached and sold on a debt due from Rickey to
himself and purchased the same at such sale.   He now
claims that the Rickey note remains unsatisfied and that
he may resort to the Keel mortgage for payment.   To this
appear several objections.   When Levy purchased Rickey's
interest in that grain, being also the holder of the mort-
gage thereon, it is difficult to see why the mortgage
interest was not merged.   By that purchase the entire
interest becomes vested in him and there is nothing to
show that he intended to keep the mortgage in force as a
lien.   1 Jones on Mortgage, § 871; *Cotton* v. *Colton,* 3 Phil.
24; *Klock* v. *Cronkhite,* 1 Hill, 107; *Shaver* v. *Williams,*
87 Ill. 469; *Lynch* v. *Pfeiffer,* 110 N. Y. 33.   If a merger
did take place, which we do not now deem it necessary to
decide, for other reasons presently to be stated, then the
mortgage ceased to exist; it was drowned in the greater
estate, and Keel would be exonerated.

3. But there is another objection to the defense relied upon. If Keel's property should be applied to pay off Rickey's note and mortgage, he would at once be subrogated to Levy's rights under Rickey's mortgage and would be entitled to have the property which Rickey mortgaged applied in payment of the debt. In other words, by operation of law, Rickey's note and mortgage would be assigned to him. 3 Pomeroy's Eq. Juris., § 1419, and authorities there cited; *Fields* v. *Sherrill*, 18 Kan. 365; *Low* v. *Smart*, 5 N. H. 353; *Muir* v. *Berkshire*, 52 Ind. 149. But by the sale of this mortgaged property Levy has destroyed the fund to which Keel was entitled to resort to reïmburse himself had he paid Rickey's debt, and for that reason alone I think Levy has precluded himself from resorting to Keel's property for payment.

4. One other objection. Where the principal and surety have both mortgaged property for the debt of the principal, the surety is entitled to have the property of the principal sold first and applied in satisfaction of the debt. *Neimcewicz* v. *Gahn*, 3 Paige Ch. 614; *James* v. *Jaques*, 26 Texas, 320. In this case, the defendant Levy, having caused this mortgaged property to be sold on another process for his own benefit, has received the proceeds of the sale and has the same now in his possession. Under the particular facts disclosed by this record, I think the law would apply such proceeds in exoneration of the plaintiff's property, and that Levy could not be permitted to apply the same on his individual debt to the injury of the plaintiff. That grain was mortgaged to secure Rickey's debt, as well as the grain of the plaintiff, and that fact gave the plaintiff the right to insist that Rickey's grain should be first applied in payment of Rickey's debt. The defendant Levy stands in no position to co test or deny this right. Rickey's grain brought $1,115.50. The sheriff's bill for harvesting the entire crop was $1,058.79. Assuming without deciding that Rickey was properly chargeable with one-third of this expense because he owned one-third of the grain harvested, his portion of the

expense would be $352.93. Deducting this amount from the proceeds of the sale, $1,115.50, and there remained $762.67 to be applied in discharge of Rickey's mortgage, or so much thereof as was necessary. It seems to me this view of the subject alone is enough to entirely dispose of the contention of the defendant. The propriety of this application of the money cannot be questioned, for the reason that the lien of the chattel mortgage on a growing crop follows the grain after severance and removal, and the money after sale. *Muse* v. *Lehman,* 30 Kansas, 514; *Rider* v. *Edgar,* 54 Cal. 127.

5. But it was substantially conceded upon the argument that the fact is established by the evidence that the defendant paid for harvesting the grain, $866. The plaintiff gets the benefit of one-half of this sum, namely, $453; which we have concluded to deduct from the decree appealed from.

The decree appealed from will therefore be modified to this extent and all other respects affirmed.

The appellant recovers costs in this court.