In re DIAMOND T. TRUCK SALES AGENCY OF OREGON, Inc.

(District Court, D. Oregon. July 17, 1922.)

No. B-5409.

Bankruptcy ⬤╌312—Settlement held to extinguish claim.

A creditor of bankrupt held bills of sale of automobiles and trucks as security. After bankruptcy, it took the property, paying the trustee $5,000 for his interest therein, and in settlement of their claims and differences; the trustee having claimed that its lien was invalid. *Held*, that such settlement effected a merger of its lien and also extinguished the debt.

In Bankruptcy. In the matter of the Diamond T. Truck Sales Agency of Oregon, Incorporated, bankrupt. On review of order of referee disallowing claim of the Western Bond & Mortgage Company. Affirmed.

This matter is here on review from the order of the referee in bankruptcy, disallowing the claim of the Western Bond & Mortgage Company, presented against the estate of the bankrupt for $26,622.07. Briefly stated, the mortgage company held bills of sale of certain trucks and automobiles, given by the sales agency to secure the payment of a large sum of money advanced to it by the mortgage company. Immediately prior to bankruptcy, the sales agency gave bills of sale covering some of these trucks and automobiles to certain individuals, namely, Lebb, Walling, and Waller. The mortgage company caused the property to be replevined, which was placed in the Ice Hippodrome then under the supervision of the trustee. Thereafter a portion of the trucks and automobiles were sold by the trustee, under an agreement between him and the mortgage company, and the proceeds in every case accounted for to the mortgage company to the extent of its lien, and the balance (balance refers here to trucks and automobiles) was retained by the trustee as property of the estate of the bankrupt. Lebb, Walling, and Waller made overtures to the trustee, but without avail, to purchase the interest of the trustee in the machines; the trustee preferring to deal with the mort-

gage company respecting them. This eventuated in an agreement between the trustee and the mortgage company, whereby the latter purchased from the trustee his interest in all the machines covered by the bills of sale held by the mortgage company.

The agreement by its preamble sets out that "the parties hereto at this time desire to settle all differences or claims in respect to said automobiles and said auto trucks." Among other things, the trustee agrees to prosecute a suit to set aside as preferential and fraudulent the bills of sale given to Lebb, Walling, and Waller, so as to clear the title in so far as incumbered by such bills of sale. He further agrees to execute a bill of sale to the mortgage company, conveying all his right, title, and interest in and to certain automobiles and trucks as described in a list designated Exhibit B, and either to include in such bill of sale list designated Exhibit C, or to execute an additional bill of sale for such list; the bill of sale or bills of sale to be deposited in escrow with the Hibernia Commercial & Savings Bank of Portland. The mortgage company agrees, on the other hand, to save the trustee harmless from any liability that may arise by reason of the delivery of possession to it by the trustee of the automobiles and trucks shown by list Exhibit C. The mortgage company further agrees that it will forthwith deposit with the savings bank in escrow the sum of $5,000, to be held subject to the terms of the agreement. It is then further stipulated that, when judgment or decree is obtained and rendered in the suit alluded to, to be prosecuted against Lebb, Walling, and Waller, and upon performance of the covenants of the agreement on the part of the trustee, the trustee shall be entitled to the $5,000 from the depositary and that upon payment of such sum to the trustee the bank shall also deliver the bill or bills of sale to the mortgage company, but that, if the suit should prove to be unsuccessful, then the bank shall pay to the trustee $1,000 only upon the trustee's delivering to the bank a bill of sale covering all his right, title, and interest in the automobiles and trucks as listed as Exhibits B and C, excepting such as the title to which shall be determined against the trustee, and that, upon such payment being made, the bank shall deliver the bill of sale to the mortgage company.

W. G. Keller, of Portland, Or., for trustee.

H. M. Isaacs and John F. Reilly, both of Portland, Or., for Western Bond & Mortgage Co.

WOLVERTON, District Judge (after stating the facts as above). The question for decision turns upon whether the claim of petitioner was discharged by the agreement of the parties thus entered into; it being understood that the agreement has been fully executed and the $5,000 paid into the hands of the trustee. The bills of sale held by the mortgage company are, in effect, chattel mortgages to secure payment of the advances made to the bankrupt. It is obvious that the $5,000 was paid to the trustee as a consideration for the transfer of his title and interest in the automobiles and trucks. His interest was simply the equity which he held in the machines, subject to the mortgage company's liens thereon.

Much contention is indulged in here with respect to whether the machines were at the time worth more than the amount of the liens. The simple fact that the mortgage company was willing to pay the trustee $5,000 for his equity affords a very strong inference that it so considered them, for why should it pay anything if they were worth less? In order to be sure of its ultimate title, the mortgage company required of the trustee that he quiet the same by the suit which the trustee prosecuted, and with success. There was a dispute which it was manifestly intended by the agreement to settle, namely,

whether the mortgage company had a valid lien on the machines; the trustee claiming that there was some irregularity in allowing the vendor to retain possession of the cars with authority to dispose of them. But neither party seems to have considered this seriously, and manifestly it cut but little figure in inducing the agreement.

Previous to the agreement, the trustee had been selling the cars and accounting to the mortgage company for the amount of its lien against each particular car. The sales slackening, however, in number, the mortgage company became desirous of handling the business for itself. The only way it could do this without the consent of the trustee, unless by foreclosure, was to purchase the trustee's equity, which it did in the manner stipulated in the agreement.

When the legal title becomes vested in the mortgagee of that title, presumptively the lesser estate is absorbed by the greater, and what is termed a merger takes place, and the lesser estate ceases to exist, unless it be that it was the intention of the parties concerned to keep the estates separate, or justice requires it to be done. Such is the case whether the mortgage is in character real estate or chattel. Hull v. Cronk, 55 App. Div. 83, 84, 67 N. Y. Supp. 54; Keel v. Levy, 19 Or. 450, 453, 24 Pac. 253. Says the court in Hull v. Cronk, quoting from Pomeroy:

"Under like circumstances a merger will take place in equity, where no intention to prevent it has been expressed, and none is implied from the circumstances and the interests of the party; and a presumption in such a case arises in favor of the merger."

Now, turning again to the agreement, the purpose thereof, as expressed in the preamble, was to settle all differences and claims in respect to the automobiles and auto trucks. The mortgagee paid for the trustee's equity a considerable sum, which inferentially indicates that it believed the cars to be worth that amount above the aggregate of its liens. Otherwise, it could have obviated such payment by simply resorting to the process of foreclosure for relief. As a further consideration for the payment of $5,000 for the trustee's equity, there was the covenant of the trustee to quiet the title to certain of the cars against the claim of Lebb, Walling, and Waller. But this was by no means the sole consideration for the payment of that sum. It was a means employed by the parties for settling their differences and claims, so that the mortgage company might be assured of the title to the cars, and the trustee might obtain the agreed value to which he was entitled for his equity. There is neither in all this, nor from the circumstances present, any expression or implication of intention to obviate a merger. Nor does justice seem to require that the estates be kept separate; the mortgage company having apparently received property of value in excess of the aggregate of its liens. The debt, as well as the mortgage, has been extinguished by the merger.

The referee's order is affirmed.