B. H. THOMAS v. C. C. DICKINSON, J. D. HEATH, trading as Heath Mercantile Company, and GREENWOOD PRODUCTS COMPANY.

30 So. (2nd) 382                                   January Term, 1947
April 29, 1947                                    Special Division A

*Cecil A Rountree,* for appellant.
*Clyde R. Brown,* for appellees.

CHILLINGWORTH, Associate Justice:

. This is an appeal by the plaintiff from a final decree of foreclosure of a chattel mortgage and a statutory lien for rent and crop advances. A decree pro confesso was entered against the mortgagor, Dickinson. The Court, after hearing the testimony, dismissed the amended bill as to the defendants, J. D. Heath, trading as Heath Mercantile Company, and Greenwood Products Company, being of the opinion "That the plaintiff, by his laches, lack of diligence and accepting a portion of the sale proceeds of the peanuts referred to in the pleadings and evidence, is estopped from proceeding against the defendants as to whom said bill is dismissed." Plaintiff-appellant contends that the Court erred in dismissing the bill as to the named defendants, in that the record discloses no waiver of the lien, laches or estoppel.

This case was before this Court on a former occasion. Thomas v. Dickinson (not reported). The Court then de-

nied a petition for certiorari, which sought to quash an order granting a motion to dismiss the amended bill as to the defendants, Fisher Hardware Company, Cawthon State Bank and The First Bank of DeFuniak Springs.

Thomas, the plaintiff, as landlord, made a farming rental deal with Dickinson, a defendant, as tenant, as a result of which Dickinson, under date of February 25, 1944, executed to Heath a combination note and mortgage encumbering certain farm products grown by Dickinson on the Thomas farm and other personal property. A peanut crop was harvested. It was picked by a machine owned by Thomas. With the knowledge of Thomas, it was sold by Dickinson to Heath, trading as Heath Mercantile Company, who acted as agent for Greenwood Products Company. Heath made out a check to Dickinson for the aggregate value of the peanuts sold. This was a check drawn on the Greenwood Products Company, for whom Heath acted as agent. Dickinson immediately endorsed this check over to Heath. Heath, knowing of the interest of Thomas, then delivered to Dickinson a check made out in pencil to Dickinson and Thomas for $697.75, the net value of the peanuts, a check to one Spears for the hauling, and a check to Thomas for picking the peanuts. The checks were dated October 30, 1944.

Dickinson returned to Thomas and delivered to Thomas the check covering the cost of picking the peanuts. Dickinson falsely stated to Thomas that no final settlement had been made in connection with the peanut sale, as the total weights had not yet been determined. Heath never communicated with Thomas as to the sale.

Dickinson altered the check for $697.75, by erasing, or partially erasing, the name of Thomas, who appeared as one of the payees. Thomas had no knowledge whatsoever of the check made out to him and Dickinson for the peanuts, and no knowledge of the alteration of the check. Dickinson cashed the check through the Fisher Hardware Company, who endorsed it to the Cawthon State Bank, who on November 4, 1944, endorsed it to the drawee, The First National Bank, in DeFuniak Springs, which concerns are not now before the court. The account of Heath was charged with the check.

While the date of the return of the check to Heath does not appear in the evidence, it may be fairly inferred that, in the due course of banking, The First National Bank of DeFuniak Springs returned the check to Heath with the usual monthly bank statement soon after December 1, 1944.

Thomas made two trips to see Heath about payment for the peanuts, but could obtain no information from Heath or the secretary of Heath as to the consummation of the sale of the peanuts, or as to the manner in which Heath had made payment for the peanuts. Under date of January 24, 1945, Heath, in response to a letter from the attorney for Thomas, then disclosed that Heath had endeavored to make payment to Thomas, but that someone had tried to erase the Thomas name from the check and that the check had been cashed without endorsement by Thomas, even though the Thomas name could still be read on the check. Thomas filed suit March 19, 1945.

Heath, appellee, citing 31 . C.J.S. 236, contends that Thomas is barred by an equitable estoppel. But the record here discloses no conduct on the part of Thomas whereby he was precluded from asserting his rights against Heath. Thomas did not harmfully withhold information as to his interest in the property nor was there any breach of duty on the part of Thomas to advise Heath of the interest of Thomas, for Heath knew of the interest of Thomas, when Heath accepted the peanuts from Dickinson. Thomas has been guilty of no culpable negligence. No delay on the part of Thomas has resulted in any injury or disadvantage to Heath. In Hendricks v. Stark, 99 Fla. 277, 126 So. 293, the Supreme Court held that in order to work an "estoppel," "silence," must be under such circumstances that there are both a specific opportunity and a real apparent duty to speak. Mere silence does not release the lien. Patterson v. Taylor, 15 Fla. 336. Hence equity will not bar Thomas, because he was silent, in view of the fact that there was no duty upon him to speak.

Heath knew, or should have known, soon after the 1st of December, 1944, that he, Heath, had never paid Thomas for the peanuts, yet Heath made no effort to protect himself because of the alteration of the check or to make any payment

to Thomas for the peanuts. There was a duty on Heath to act when he knew that Thomas had not endorsed the check, as that was long before Thomas knew of the existence of the check.

Appellee, further citing 14 C.J.S. 877, 881, and 97 A.L.R. 650, also urges that the consent of Thomas to the sale of the Peanuts caused him, Thomas, to lose his lien, because an acceptance of a part of the proceeds, on the part of Thomas, created a ratification of the sale by Thomas. However, the record here discloses that Thomas only received payment for picking the peanuts, and not for his interest and claim to the peanuts. While this was a part of the gross proceeds of the sale, Thomas was without any knowledge whatsoever of the consummation of the sale or the payment of any of the proceeds of any sale beyond the picking and hauling charges. Thomas did not consent to payment by Heath to Dickinson for the interest of Thomas. Thomas should not be charged with a ratification of the sale because of the payment to Dickinson until he, Thomas, knew of the payment or until he should be charged with that knowledge. Dickinson had authority to sell the peanuts but, as Heath was aware, the sale was to be made protecting the lien of Thomas, the mortgagee. The conversion was not wrongful, as in White Engineering Corporation v. Peoples State Bank, 81 Fla. 35, 87 So. 753.

Upon a sale of the mortgaged property by the mortgagor, with the consent of the mortgagee, conditioned upon the mortgagor's agreement to apply the proceeds of the sale upon the mortgage debt, the mortgagee does not lose his right to the proceeds by such consent. 36 A.L.R. 1384. Under such circumstances as between the mortgagor and the mortgagee the lien of the mortgage is transferred from the chattels to the proceeds of the sale. The mortgagee has the right to the proceeds where the proceeds are by terms of an agreement to be received and applied by a third person to the mortgage debt. 10 Am. Jur. 849, 14 C.J.S. 891, 97 A.L.R. 668; Keel v. Levy, 19 Ore. 450, 24 Pac. 253; United Film Ad Service v. Roach, 222 Mo. App. 339, 297 S.W. 91; Cole-McIntyre-Norfleet Co. v. DuBard, 135 Miss. 20, 99 So. 474. The conduct of Heath constituted an implied agreement on his part to apply the pro-

ceeds of the sale to the claim of Thomas, which claim was the mortgage debt.

The final decree should be reversed as to the defendants, Heath and Greenwood Products Company, with directions to enter a personal decree against them for an amount not to exceed the net value of the peanuts and interest, in the event the remaining property under the mortgage does not sell for a sufficient amount to satisfy the final decree and costs.

Reversed.

THOMAS, C. J., TERRELL and CHAPMAN, JJ., concur.