STEVENSON, J.
 

 Lloyds Underwriters at London (“Lloyds”) challenges a final summary judgment finding the company estopped from relying upon a policy provision that would have provided a ground for denial of the insured’s claim. Lloyds contends that the summary judgment was improper because genuine issues of material fact remain and the application of the doctrine of estoppel resulted in an impermissible creation or extension of coverage. We reject both arguments and affirm the summary judgment.
 

 
 *91
 

 The Summary Judgment Proceedings Below
 

 Through its agent, Martin-Argote Insurance Group, LLC, Ricardo Milan d/b/a Milan Transportation obtained an insurance policy from Lloyds providing liability coverage on a commercial tractor-trailer. The policy’s effective date was November 30, 2004. The tractor-trailer was stolen on December 18, 2004. It is undisputed that the policy in question provided coverage for loss due to theft. Nonetheless, Lloyds denied the claim, relying upon the insurance policy’s “Garaging or Secured Yard Warranty” (“garaging warranty”). The garaging warranty required the insured to “warrant” that the vehicle would be kept in a closed garage, in an enclosed or 24-hour guarded lot, or parked adjacent to the insured’s residence and provided a breach of such warranty “shall result in denial of claim or any rights of recovery hereunder.”
 

 Following Lloyds’ denial of the claim, Milan brought a claim for breach of the insurance contract. Milan later moved for summary judgment on the claim, arguing that Lloyds was estopped from relying, or had waived its right to rely, upon any breach of the garaging warranty to justify the denial of its insured’s claim. Milan’s primary argument was that this estoppel arose because Lloyds and/or International Brokerage and Surplus Lines (IBSL),
 
 [1]
 
 the surplus lines agent through whom the insurance had been issued, had failed to comply with the notice and delivery requirements of Florida Statutes sections 627.421 and 626.922, and the insured had not otherwise been provided notice of the garaging warranty. Section 627.421 requires delivery of the insurance policy not more than sixty days after effectuation of coverage.
 
 See
 
 § 627.421(1), Fla. Stat. (2008). Section 626.922 requires the surplus lines agent to “promptly issue and deliver to the insured” either the policy or, if the policy is not “then available, a certificate, cover note, or other confirmation of insurance” showing, among other things, “coverage, conditions, and term of the insurance.” § 626.922(1), Fla. Stat. Section 626.922(4) provides that “[a] copy of the policy or cover note or confirmation of insurance shall be delivered to the insured within 60 days after the effectuation of coverage.” In support of his motion for summary judgment, Milan filed an affidavit, wherein the insured swore that the loss had occurred on December 18, 2004, that he had not received a copy of the binder or policy prior to the loss, and that he had not otherwise received written or verbal notice of the garaging warranty. Milan also filed a copy of the binder issued by the surplus lines agent, bearing a date of January 2, 2005, and the Lloyds’ policy, listing February 9, 2005, as the date printed on the schedules of equipment and drivers.
 

 In its written response to the summary judgment motion, Lloyds did not challenge Milan’s assertions that he was not provided a copy of the binder or policy until after the loss and, instead, expressly acknowledged the binder was not delivered until after the loss. Lloyds also did not challenge in its written response Milan’s claim that he was not otherwise provided notice of the garaging warranty. Instead, Lloyds
 
 *92
 
 argued that it could not be estopped from relying upon the garaging warranty to deny the claim as a consequence of any failure to comply with sections 627.421 and 626.922 because Florida law expressly provides that the doctrines of estoppel and waiver may not be applied to create or extend insurance coverage. The trial court granted summary judgment in favor of the insured. We affirm and write solely to address our dispositive conclusion that the record evidence was sufficient to demonstrate that, as a matter of law, the insurer was estopped from resorting to the garaging warranty to deny the claim.
 

 Provisions of Forfeiture versus Provisions of Coverage
 

 On appeal, Lloyds argues that, regardless of any failure to comply with sections 627.421 and 626.922, or the failure to provide the insured with the binder, the policy or other notice of the garaging warranty prior to the loss, the summary judgment was entered in error because Florida law holds that the doctrines of estoppel and waiver cannot be applied to create or extend insurance coverage. For purposes of application of the doctrines of estoppel and waiver, Florida law draws a distinction between provisions of forfeiture and provisions of coverage. Thus, “while an insurer may be estopped by its conduct from seeking a Forfeiture of a policy, the insurer’s Coverage or restrictions on the Coverage cannot be extended by the doctrine of waiver and estoppel.”
 
 Six L’s Packing Co. v. Fla. Farm Bureau Mut. Ins. Co.,
 
 268 So.2d 560, 563 (Fla. 4th DCA 1972),
 
 aff'd,
 
 276 So.2d 37 (Fla.1973); see
 
 also AIU Ins. Co. v. Block Marina Inv., Inc.,
 
 544 So.2d 998, 1000 (Fla.1989);
 
 Cummins v. Allstate Indem. Co.,
 
 732 So.2d 380, 382 (Fla. 4th DCA 1999). The rationale behind the rule is that “ ‘the company should not be required by waiver and estoppel to pay a loss for which it charged no premium.’ ”
 
 Unijax, Inc. v. Factory Ins. Ass’n,
 
 328 So.2d 448, 455 (Fla. 1st DCA 1976) (quoting W.C. Crais, III,
 
 Comment Note: Doctrine of estoppel or waiver as available to bring within coverage of insurance policy risks not covered by its terms or expressly excluded therefrom,
 
 1 A.L.R.3d 1139, 1144 (1965)).
 

 The distinction between a provision of forfeiture and one of coverage has been said to turn upon whether the loss was covered by the contract in the first instance and is asserted to have been lost or nullified as a consequence of the actions of the insured; if this is the case, then the provision is one of forfeiture.
 
 See Peters v. Great Am. Ins. Co., N. Y,
 
 177 F.2d 773, 779 (4th Cir.1949) (“ ‘If by the contract the insured [sic — insurer] assumed a stated risk primarily, and provided for a forfeiture upon the happening of certain conditions, its right to claim such forfeiture may be waived; but, where it expressly and specifically declined to assume such risk, it cannot by its conduct be held to have waived itself into making a contract which had not been entered into.’ ” (quoting
 
 Keistler Co. v. Aetna Ins. Co., Hartford, Conn.,
 
 124 S.C. 32, 117 S.E. 70, 75 (1923)));
 
 Royal Maccabees Life Ins. Co. v. James,
 
 146 S.W.3d 340, 350 (Tex.Ct.App.2004) (“ ‘Whereas waiver and estoppel may operate to avoid forfeiture of a policy and may prevent an insurance company from avoiding payment because of the failure on the part of the insured to comply with some requirement of the policy, waiver and es-toppel cannot enlarge the risks covered by a policy (quoting
 
 Minn. Mut. Life Ins. Co. v. Morse,
 
 487 S.W.2d 317, 320 (Tex.1972))).
 

 Generally, “clauses that are inclusionary or exclusionary, that outline the scope of coverage, or that delineate the dollar amount of liability” are described as pertaining to coverage, while “forfeiture claus
 
 *93
 
 es often include provisions such as filing a timely notice of claim and submitting proofs of loss, and are invoked to avoid liability for existing coverage.”
 
 Creveling v. Gov’t Employees Ins. Co.,
 
 376 Md. 72, 828 A.2d 229, 244-45 (2003). Despite Lloyds’ argument to the contrary, we hold that the garaging warranty in the instant case is a provision of forfeiture — not one of coverage. Loss due to theft was plainly covered by the policy and a risk for which a premium was paid. The garaging warranty provides for the loss, or forfeiture, of that coverage should the insured fail to behave in a particular manner and comply with its provisions concerning the storage of the tractor-trailer.
 

 AIU Insurance Co. v. Block Manna Investment, Inc.,
 
 544 So.2d 998 (Fla.1989), a case upon which Lloyds heavily relies, is not dispositive. There, AIU issued a commercial general liability policy to Block Marina with a marina operator’s legal liability endorsement that would have provided coverage for the incident in question. Prior to the loss, this endorsement was eliminated from the policy. Nonetheless, the insurer agreed to provide a defense subject to its reservation of the right to assert a coverage defense as a consequence of the endorsement’s elimination. Two weeks before trial, AIU refused to provide further defense and, in so doing, violated section 627.426(2)(a), which provides that an insurer cannot deny coverage based on a coverage defense unless at least thirty days prior to trial the insurer provides written notice to its insured of its refusal to defend. Our supreme court held that the insurer’s violation of the statute’s notice requirements could not estop the insurer from denying coverage, reiterating the long-standing rule that “while the doctrine of estoppel may be used to prevent a forfeiture of insurance coverage, the doctrine may not be used to create or extend coverage.”
 
 Id.
 
 at 1000. Allowing estoppel to be applied in
 
 AIU
 
 would have created or extended coverage for an endorsement that was no longer a part of the policy. In the instant case, payment for the loss of the tractor-trailer due to theft was clearly within the bounds of the policy and application of the doctrine of estoppel would not serve to create or extend coverage.
 

 Existence of Disputed Issues of Material Fact
 

 Having concluded that the garaging warranty is a forfeiture provision and thus one that Lloyds may be estopped from resorting to in order to deny its insured’s claim, the issue becomes whether the record evidence before the trial court on summary judgment established the elements of estoppel as a matter of law. “The essential elements of estoppel are ‘(1) a representation as to a material fact that is contrary to a later-asserted position, (2) reliance on that representation, and (3) a change in position detrimental to the party claiming estoppel, caused by the representation and reliance thereon.’ ”
 
 Curci Village Condo. Ass’n v. Maria,
 
 14 So.3d 1175, 1177 (Fla. 4th DCA 2009) (quoting
 
 State v. Harris,
 
 881 So.2d 1079, 1084 (Fla.2004)). The “representation” upon which an estop-pel may be predicated may consist of words, conduct, or, if there is a duty to speak, silence.
 
 See Head v. Lane,
 
 495 So.2d 821, 824 (Fla. 4th DCA 1986);
 
 see also Thomas v. Dickinson,
 
 158 Fla. 819, 30 So.2d 382, 384 (1947) (“[I]n order to work an ‘estoppel,’ ‘silence[]’ must be under such circumstances that there are both a specific opportunity and a real apparent duty to speak.”).
 

 We have no trouble finding that, here, the insurer had a duty to speak and to inform the insured of the garaging warranty prior to any attempt on its part to resort to this provision to deny the insured’s claim under the policy. Insurance
 
 *94
 
 contracts are unusual in that, at the onset of the contractual relationship, one of the contracting parties, i.e., the insured, has not yet had the opportunity to review the terms of the insurance contract.
 
 [2]
 
 On the other hand, as the drafter of the contract, the insurer is in a unique position to know the contents and requirements of the insurance policy. For this reason, logic and fairness dictate that while an insurer is free to require its insured to warrant or promise to behave in a particular manner, the insurer has a duty to inform the insured of such warranty or promise before the insurer can insist upon compliance with the same and impose the penalty of a forfeiture of all coverage for the insured’s noncompliance. The undisputed evidence at the summary judgment hearing established that the insurer failed to make the garaging warranty known to its insured. The first element of estoppel is thus present as the insurer’s silence in the face of a duty to speak is contrary to its subsequent insistence upon its insured’s compliance with the garaging warranty.
 

 This, then, brings us to the second and third elements of estoppel, reliance and a detrimental change in position. Of course, there can be no reliance or detrimental change in position if, prior to the loss, Milan had knowledge of the garaging warranty. In support of his motion for summary judgment, Milan filed an affidavit attesting that he had previously been insured by Canal Insurance, which had no provision like the garaging warranty in the Lloyds’ policy; that he was unaware of the garaging warranty prior to the loss; and that he would have parked the tractor-trailer in compliance with the warranty had he known of the same. Despite Lloyds’ argument to the contrary, there was no competent evidence offered to rebut Milan’s claim of lack of knowledge.
 

 Among the documents filed by Milan was “Lloyds Amended Response to Third Party Plaintiffs First Interrogatories,” which included an assertion that Martin-Argote was aware of the garaging warranty and that Martin-Argote informed the insured of the same prior to the loss. This amended response was signed only by Lloyds’ counsel. The day before the summary judgment hearing, Lloyds sought to file a set of responses signed by Jeff Washburn, who investigated the loss and is employed by a company that selves as a third-party administrator for Lloyds. Lloyds insists that these answers to interrogatories are sufficient to create an issue of fact on the issue of whether the insured had notice of the garaging warranty prior to the loss. Lloyds is incorrect. Rule 1.510 specifically requires that the evidence offered in support of, and in opposition to, a motion for summary judgment must be admissible in evidence.
 
 See
 
 Fla. R. Civ. P. 1.510(c). Plainly, neither Lloyds’ counsel nor Washburn had personal knowledge of whether Martin-Argote informed the insured of the garaging warranty, and their hearsay statements on the matter would not be admissible in evidence and could not be relied upon to create an issue of fact and avoid summary judgment.
 
 See Topping v. Hotel George V,
 
 268 So.2d 388, 389 (Fla. 2d DCA 1972) (recognizing
 
 *95
 
 interrogatories sworn to only by counsel, not the appropriate agents or employees with knowledge of the facts, could not support entry of summary judgment);
 
 see also
 
 Fla. R. Civ. P. 1.340(b) (providing that answers to interrogatories may be used at trial to the extent permitted by the rules of evidence).
 

 We have considered the other arguments raised on appeal, but find no error. Accordingly, we hold that the trial court was correct in granting summary judgment in favor of Milan since Lloyds’ failure to provide its insured a binder, a copy of the policy, or any other notice of the garaging warranty prior to the loss is alone sufficient to estop it from resorting to a breach of the garaging warranty to deny the claim.
 

 Affmned.
 

 GERBER, J., and BROWN, LUCY CHERNOW, Associate Judge, concur.
 

 [1]
 

 . Where insurance coverage is not available through "authorized” insurers, Florida's “Surplus Lines Law" is intended to provide Florida's citizens "access” to such insurance through unauthorized insurers via qualified and licensed "surplus lines agents.” § 626.913(2), Fla. Stat. (2008). " ‘Surplus lines agent’ means an individual licensed as provided in this part to handle the placement of insurance coverages with unauthorized insurers and to place such coverages with authorized insurers as to which the licensee is not licensed as an agent.” § 626.914(1), Fla. Stat. (2008).
 

 [2]
 

 . This circumstance is typically addressed by the issuance of a binder to the insured. Section 627.420, Florida Statutes (2009), provides that binders "shall be deemed to include all the usual terms of the policy as to which the binder was given together with such applicable endorsements as are designated in the binder, except as superseded by the clear and express terms of the binder.” The undisputed record evidence established that no binder was issued to the insured until January 2, 2005, more than a month after the effectuation of coverage and a couple of weeks after the loss. The garaging warranty was not included or described in the binder.