495 So.2d 821 (1986)
Thomas A. HEAD, Etc., Appellants,
v.
Paul G. LANE, Pine Creek Development Corporation, a Florida Corporation, by and through Paul G. Lane, Robert G. Currie, Herbert Schaffer and Lemon Bay Breezes Development Corporation, a Florida Corporation, Appellees.
No. 85-2207.
District Court of Appeal of Florida, Fourth District.
October 1, 1986.
*822 Bruce Zeidel of Law Offices of Cohen, Scherer & Cohn, P.A., North Palm Beach, for appellants.
Jeff M. Brown of Law Offices of LaValle, Wochna, Rutherford & Brown, P.A., Boca Raton, for appellees.
WETHERINGTON, GERALD T., Associate Judge.
This appeal involves a shareholder's derivative action commenced by appellee, Paul Lane, on behalf of appellee, Pine Creek Development Corporation, of which Lane and appellants, Head, Schaffer and Currie, were equal 25% shareholders. The action is premised upon the theory that appellants breached a fiduciary duty that they owed to appellee, Pine Creek, by usurping Pine Creek's corporate opportunity to purchase and develop for sale and profit a parcel of real property.[1]
A jury rendered a verdict against appellants and assessed damages of $60,000.00 in favor of appellee, Pine Creek.[2]
Appellee, Pine Creek, moved for a new trial on the issue of damages on the grounds that the undisputed evidence showed damages of $360,000.00. Appellants moved for a new trial on both liability and damages. The trial court granted a new trial on the issue of damages only and denied appellants' motion for a new trial on the liability issue. Finding error in the trial court's refusal to give appellants' requested jury instructions on the affirmative defenses of estoppel and laches, we reverse and hold that there should be a new trial on the issues of both liability and damages.
Evidence presented during trial showed that in November of 1979, Pine Creek Development Corporation was formed with appellants, Head, Schaffer and Currie and appellee, Lane, as equal 25% shareholders. There is conflicting testimony as to whether Pine Creek was formed to acquire and develop real property owned by Lane or the parcel in question, known as the Dunwody property. It is undisputed that at about the time of the formation of Pine Creek, a contract was prepared listing Lane and appellants, Head, Schaffer and Currie, as purchasers *823 of the Dunwody property for $300,000.00, with $60,000.00 down and a purchase money mortgage of $240,000.00. The buyers were also required to pay a broker's commission of $30,000.00 to real estate broker, James Thompson, with whom appellee, Lane, was affiliated. Lane claimed entitlement to one-half of this commission on the grounds that he had brought the buyers, including himself, to Thompson.
Although there is considerable conflict in the testimony as to what happened thereafter, there is evidence sufficient to permit a jury to reasonably find that the following occurred. Head, Schaffer and Currie became convinced that Lane had not been truthful with them concerning his willingness to defer his $15,000.00 portion of the $30,000.00 real estate commission payable to the broker, Thompson. As a result, they advised Lane that they did not wish to develop the Dunwody parcel with him. When Lane was advised that he was out of the transaction, he did not seem surprised and responded that he was "sharing in the commission." There was testimony that Lane did not, at any time before filing suit, object to being excluded from being a purchaser himself or claim that Pine Creek was entitled to purchase the Dunwody property. After Lane was advised that he was out of the transaction, Head, Schaffer and Currie formed appellant, Lemon Bay Breezes Corporation, through which they later purchased the Dunwody property. Head, Schaffer and Currie obtained the money for the down payment and personally guaranteed the promissory notes signed by appellant, Lemon Bay Breezes, and secured by a purchase money mortgage. The real estate commission on the sale to Lemon Bay Breezes was paid in cash with $15,000.00 of the $30,000.00 real estate commission going to Lane who accepted it without objecting to the sale. Shortly thereafter, Lane filed suit individually and on behalf of Pine Creek. Subsequently, Lane elected to drop his individual claim and proceed on his shareholder's derivative action on behalf of Pine Creek.
The origin and purpose of a shareholder's derivative action were classically stated by Justice Jackson in Cohen v. Beneficial Industrial Loan Corporation, 337 U.S. 541, 548, 69 S.Ct. 1221, 1226, 93 L.Ed. 1528, 1537 (1948), in the following language:
Equity came to the relief of the stockholder, who had no standing to bring civil action at law against faithless directors and managers. Equity, however, allowed him to step into the corporation's shoes and to seek in its right the restitution he could not demand in his own. It required him first to demand that the corporation vindicate its own rights but when, as was usual, those who perpetrated the wrongs also were able to obstruct any remedy, equity would hear and adjudge the corporation's cause through its stockholder with the corporation as a defendant, albeit a rather nominal one. This remedy born of stockholder helplessness was long the chief regulator of corporate management and has afforded no small incentive to avoid at least grosser forms of betrayal of stockholders' interests. It is argued, and not without reason, that without it there would be little practical check on such abuses.
See also Lanman Lithotech, Inc. v. Gurwitz, 478 So.2d 425 (Fla. 5th DCA 1985); Schilling v. Belcher, 582 F.2d 995, 1001 (5th Cir.1978).
A shareholder who initiates a shareholder's derivative action, however, is, as Justice Jackson further stated, a "self-chosen representative and a volunteer champion" of the corporation and, as such, acts as a fiduciary in asserting the corporation's interests. The corporation is thus dependent upon his "diligence, wisdom and integrity." 337 U.S. at 549, 69 S.Ct. at 1227, 93 L.Ed. at 1538.
Because of the equitable nature of a shareholder's derivative action and the fiduciary obligations of a shareholder bringing such a suit, it follows that a shareholder's conduct may bar him from questioning alleged wrongs done to the corporation *824 through a shareholder's derivative action. See 12B Fletcher, Cyclopedia of the Law of Private Corporations, Section 5868, p. 308 (1984 Rev.). Specifically, it has been held in Horowitz v. United National Corporation, 324 So.2d 189 (Fla. 3d DCA 1975), cert. denied 336 So.2d 1182 (Fla. 1976), that a shareholder can be barred from relief in a shareholder's derivative action by the defenses of estoppel and laches.
The doctrine of estoppel applies to many forms of conduct. It has been observed that "the occasions for fashioning a remedy under the label of estoppel in order to prevent injustice are too numerous to count." Lambert v. Nationwide Mutual Fire Insurance Company, 456 So.2d 517, 518 (Fla. 1st DCA 1985). The essence of the doctrine, however, is that a person should not be permitted to unfairly assert, assume or maintain inconsistent positions. This principle is contained in the various applications of the doctrine.
One such application of the doctrine of estoppel, often called equitable estoppel, is present where a person attempts to change his position after representing a contrary position to another who reasonably relied upon the representation and who would suffer substantial injury if the inconsistent position were permitted to be successfully asserted. See State Department of Revenue v. Anderson, 403 So.2d 397, 400 (Fla. 1981); United Contractors, Inc. v. United Construction Corp., 187 So.2d 695, 702 (Fla. 2d DCA 1966). The representation may be made by words or conduct and, where there is a duty to speak, failure to do so can be a representation relied upon by a party claiming estoppel. Pasco County v. Tampa Development Corporation, 364 So.2d 850, 853 (Fla. 2d DCA 1978); Travelers Indemnity Co. v. Swanson, 662 F.2d 1098, 1102 (5th Cir.1981).
Another form of estoppel occurs where a person attempts to repudiate the obligations and validity of a transaction after accepting the benefits resulting from it. This rule was recognized in Doyle v. Tutan, 110 So.2d 42, 47 (Fla. 3d DCA 1959), where the court quoted with approval the following language contained in 19 Am. Jur., Estoppel, sec. 64:
"Estoppel is frequently based upon the acceptance and retention by one having knowledge or notice of the facts of benefits from a transaction, contract, instrument, regulation, or statute which he might have rejected or contested. This doctrine is obviously a branch of the rule against assuming inconsistent positions, and it has been said that such cases are referable, when no fraud either actual or constructive is involved, to the principles of election or ratification rather than to those of equitable estoppel. The result produced, however, is clearly the same and the distinction is not usually made. Such estoppel operates to prevent the party thus benefited from questioning the validity and effectiveness of the matter or transaction in so far as it imposes a liability or restriction upon him, or, in other words, it precludes one who accepts the benefits from repudiating the accompanying or resulting obligation... ."
Estoppel will also bar a person from passively looking on with knowledge that another person is expending money to purchase land under an erroneous opinion of title and then attempting to assert his claim and exercise his rights against the purchaser. Hensel v. Aurilio, 417 So.2d 1035, 1038 (Fla. 4th DCA 1982), [citing Coram v. Palmer, 63 Fla. 116, 58 So. 721, 722 (1912)].
The evidence presented by the appellants, as set forth above, was sufficient to permit the jury to reasonably find, in accordance with the above law of estoppel, that Lane was estopped from recovering damages in his shareholder's derivative action. The trial court, therefore, erred in *825 denying appellants' requested jury instruction on estoppel.
The trial court also refused to give appellants' requested jury instruction on laches. Although laches is usually held to be an equitable defense, it is obviously available and required to be instructed on, when supported by the evidence, where the parties consent to a jury trial of all issues, as was done in this case.
As applied to a shareholder's derivative action, the defense of laches applies where a shareholder, with knowledge of wrongful acts on the part of the directors or a majority of the shareholders, stands by for an unreasonable length of time without taking steps to set the acts aside or otherwise interfere, and rights are acquired by others. See 12B Fletcher, Cyclopedia of the Law of Private Corporations, Sec. 5874 at p. 313 (1984 Rev.). The length of time that will constitute an unreasonable delay will depend largely upon the circumstances of the particular case and must be viewed in relationship to the intervention of rights. See Fletcher, supra, sec. 5875 at p. 316. As stated by the court in Horowitz v. United National Corporation, 324 So.2d 189, 190 (Fla. 3d DCA 1975):
"... it is not mere delay that constitutes laches. Unreasonable delay in enforcing a right, coupled with disadvantage to another, are the elements of estoppel against the assertion of the right which is called laches." (Citing) Marshall v. C.S. Young Construction Co., 94 Fla. 11, 113 So. 565, 567 (1927).
The evidence previously set forth in this opinion created a jury issue as to whether Lane's shareholder's derivative action was barred by laches as defined above. The trial court, therefore, erred in denying appellants' requested jury instruction on laches.
The trial court's order denying appellants' motion for a new trial on liability and granting a new trial on damages is, accordingly, reversed in part and affirmed in part and this cause is remanded to the trial court for a new trial on the issues of liability and damages.
DOWNEY and GLICKSTEIN, JJ., concur.
NOTES
[1] In Uvanile v. Denoff, 495 So.2d 1177 (Fla. 4th DCA 1986), this court adopted the definition of the "corporate opportunity" doctrine enunciated in Farber v. Servan Land Company, Inc., 662 F.2d 371, 377 (5th Cir.1981) as follows:

If there is presented to a corporate officer or director a business opportunity which the corporation is financially able to undertake, is, from its nature, in the line of the corporation's business and is of practical advantage to it, is one in which the corporation has an interest, or a reasonable expectancy, and, by embracing the opportunity, the self-interest of the officer or director will be brought into conflict with that of his corporation, the law will not permit him to seize the opportunity for himself.
[2] The U.S. Supreme Court held in Ross v. Bernhard, 396 U.S. 531, 90 S.Ct. 733, 24 L.Ed.2d 729 (1970), that although a shareholder's derivative action could historically be brought only in equity the seventh amendment right to jury trial applies to those issues in a shareholders derivative action that would be subject to jury trial if the suit had been brought by the corporation in its own right. The Fifth District Court of Appeal of Florida, however, has held in Lanman Lithotech, Inc. v. Gurwitz, 478 So.2d 425 (Fla. 5th DCA 1985), that the Ross decision is not applicable to state proceedings and that in Florida there is no constitutional right to a jury trial in a shareholder's derivative action since it is an equitable action. This court held, in Uvanile v. Denoff, 495 So.2d 1177 (Fla. 4th DCA 1986), that a claim for breach of fiduciary duty in preempting a corporate opportunity was subject to trial by jury but did not discuss the issue of whether a shareholder's derivative action is subject to jury trial. In the instant case, no objection has been raised as to this issue.