SLEET, Judge.
Shirley Fintak, as personal representative of the estate of Edmund Fintak, appeals an order of the trial court entering final summary judgment on Counts I and II of her second amended complaint against Thomas Fintak and John Fintak, individually and as cotrustees of the Edmund P. Fintak Irrevocable Trust.[1] Because we find that the settlor of a self-settled trust funded with his own assets is not required to renounce any benefits received under the trust before he can challenge its validity, we conclude that the trial court erred in granting final summary judgment for Thomas and John on Counts I and II. We also find that the trial court erred in ruling that Thomas and John were entitled to summary judgment on Counts I and II under various estoppel theories. Thus, we reverse and remand this case to the trial court for further proceedings.
I. FACTUAL BACKGROUND
This is a particularly contentious case involving the dangerous amalgam of family and money. Amidst the family warmongering, this court was able to suss out the following facts relevant to this appeal.
Edmund Fintak and Shirley Fintak married in 1998. Edmund had six children from a previous marriage, including Thomas Fintak, John Fintak, Kathleen Dunn, David Fintak, Matthew Fintak, and Mi *180 chael Fintak. But the issues in this case find their genesis in Edmund’s visits to the office of attorney Jason DePaola in September 2006. During one of these visits, Edmund, accompanied by his son Thomas, executed the Edmund P. Fintak Sr. Irrevocable Trust (the Trust), prepared by Mr. DePaola.[2] The Trust is self-settled, i.e., created by Edmund for the benefit of Edmund, and was initially funded entirely by Edmund’s assets, which consisted of a substantial portion of his life savings. The Trust named Edmund, Thomas, and John as cotrustees.[3]
As stated in the Trust, its purpose was to provide for Edmund’s health, education, and support in reasonable comfort. Article III of the Trust governs the administration of the Trust during Edmund’s lifetime. In addition to providing for regular payments from the income of the Trust, Article 111(A) of the Trust provides that during the lifetime of Edmund the cotrus-tees “shall pay to or apply for the benefit of [Edmund] such part of the principal of the trust as [Edmund] shall request in writing from time to time.” In the event that Edmund became incapacitated or unable to properly manage his affairs, Article III(B) requires the cotrustees to exercise their discretion to use the income and principal of the Trust for Edmund’s “care, support and comfort ... or for any other purpose the [cotrustees] deem[ ] to be for the best interest of [Edmund].”[4]
Article VI of the Trust governs the administration of the Trust following Edmund’s death and provides that the remaining income and principal of the Trust should be divided in six equal shares and distributed to Edmund’s children.[5] The Trust makes no provision for, and no mention of, Shirley.
Beginning in January 2007, Edmund received income from the Trust on a periodic basis and also received funds from principal invasions made at his written request. But in February 2007, suspecting that Edmund was incapacitated, Edmund’s children initiated incapacity proceedings in Sarasota County. The petition for incapacity was subsequently dismissed in favor of Edmund.[6] Afterward, rather than making disbursements to Edmund, Thomas and John used the principal of the Trust to directly pay Edmund’s bills.
On August 3, 2007, Edmund filed the initial complaint against Thomas and John to compel payment of a particular written demand for $30,000 and to set aside the Trust based upon coercion. In March 2010, Edmund executed a codicil, exercising a power of appointment under the *181 Trust, to bequeath the remainder of the Trust assets to Shirley. On March 11, 2010, Edmund filed a second amended complaint raising five counts against Thomas and John, including: (1) undue influence (Count I); (2) lack of testamentary capacity (Count II); (3) a request for judicial modification of the irrevocable trust (Count III); (4) breach of trust (Count IV); and (5) a request for declaratory judgment (Count V).
At this point, the facts diverge. On the one hand, Edmund and Shirley accuse Thomas and John of undue influence and coercion in selecting Jason DePaola rather than Edmund’s regular attorney, Michael Reiter, to prepare the Trust. According to Edmund and Shirley, this alleged undue influence caused “Edmund’s hard-earned assets” to come under the control of Thomas and John and caused an increase in the shares of Edmund’s estate to the remainder of Edmund’s children. Edmund and Shirley also alleged that Thomas and John encouraged Edmund to drink alcohol with the knowledge that Edmund was taking prescribed medication for Parkinson’s Disease and that the combination of alcohol and prescription drugs would “exacerbate Edmund’s confusion and forgetfulness” to the point that when he executed the Trust, he did not understand its nature and extent. These allegations provide the basis for Edmund’s claims for undue influence and lack of testamentary capacity.
On the other hand, Thomas and John allege that Shirley was controlling Edmund and that Edmund originally sought advice from Jason DePaola regarding a divorce from Shirley. According to Thomas and John, Shirley threatened that they would never see their father again if they did not set aside the Trust. They contend that Shirley moved Edmund to Michigan and refused to provide his children with his location. Thomas and John assert that they used the Trust assets to pay for Edmund’s care by paying his expenses directly. Based on these accusations, Thomas and John filed an answer and affirmative defenses to the second amended complaint alleging that Shirley manipulated Edmund into filing this action, Edmund lacked the mental capacity to prosecute this action, and Edmund was estopped from bringing his claims because of an improper conversion of the Trust assets. Thomas and John also filed several counterclaims, which included an action to construe and declare the meanings of Article III and X of the Trust, an action for reformation of the Trust, and an action for conversion of the Trust assets against Shirley and Edmund.[7]
While the action was pending in the trial court, Edmund passed away. Shirley, as the personal representative of Edmund’s estate, was substituted as the plaintiff. Thereafter, Shirley filed a petition for probate of Edmund’s estate in Luce County, Michigan. The petition acknowledges and includes the Trust as a beneficiary of Edmund’s estate. Additionally, Shirley filed an inventory of Edmund’s estate that listed the Trust as an asset.
*182 Thomas and John moved for summary judgment on Counts I and II of the second amended complaint, arguing that Shirley, substituted for Edmund, was barred from bringing actions for undue influence and lack of testamentary capacity because Edmund failed to renounce benefits received under the Trust and because Shirley took inconsistent legal positions by listing the Trust as a beneficiary and asset of Edmund’s estate in the probate action filed in Michigan. In ruling on the motion, the trial court found that Edmund received and accepted benefits under the Trust and never returned or offered to return any of the Trust assets he received. The trial court also concluded that Shirley’s act of listing the Trust as a beneficiary and asset of Edmund’s estate in the Michigan probate proceeding was inconsistent with her assertions in this action that the Trust is invalid. Because the trial court concluded that renunciation was a condition precedent to challenging the Trust’s validity, it entered final summary judgment in favor of Thomas and John on the claims for undue influence and lack of testamentary capacity.
On appeal, Shirley contends that the trial court erred in granting summary judgment on Counts I and II because neither the renunciation rule nor estoppel applies to the facts of this case. We agree.
II. ANALYSIS
A. The Standard of Review
A party is entitled to summary judgment if no genuine issues of material fact exist and if the moving party is entitled to a judgment as a matter of law. See Volusia Cnty. v. Aberdeen at Ormond Beach, L.P., 760 So.2d 126, 130 (Fla.2000); see also Fla. R. Civ. P. 1.510(c). Although the parties intensely dispute the overall facts of this case, they do not dispute that Edmund received distributions from the Trust that he did not return or offer to return. Nor do the parties dispute that Shirley listed the Trust as a beneficiary and asset of Edmund’s estate. Because the parties do not dispute the facts relevant to the issues on appeal, the only dispositive questions on appeal are strictly questions of law. Thus, the applicable standard of review is de novo. Aberdeen at Ormond Beach, 760 So.2d at 130-31.
B. The Renunciation Rule
First, the trial court ruled that Thomas and John were entitled to summary judgment because renunciation of the benefits received under the Trust was a condition precedent to Shirley’s claims for undue influence and lack of testamentary capacity, and, therefore, a lack of renunciation was fatal to those claims.
The “renunciation rule,” established by the English ecclesiastical courts, originally provided that “a legatee, who has received a legacy by virtue of a will, must [return] the legacy before being permitted to contest the will.” Hamblett v. Hamblett, 6 N.H. 333, 337 (1833). The rule was interpreted by American courts to require that “one who receives and retains a gift under a ... will or other instrument is estopped to contest the validity of the instrument under which he derives his interest.” Barnett Nat’l Bank of Jacksonville v. Murrey, 49 So.2d 535, 536 (Fla.1950). In Barnett National Bank, the Florida Supreme Court articulated three rationales for the renunciation rule: (1) to protect the trustee in the event the trust is held invalid; (2) to demonstrate the sincerity of the contestant and to demonstrate that the suit is not merely vexatious; and (3) to have the property readily available for disposition at the outcome of the challenge. See id. at 537. In reaching its decision the court also reasoned that “before the plaintiff will be permitted to contest the trust *183 agreement through which he has derived [his] interest he must do equity.” Id. (emphasis added). Clearly, the renunciation rule as adopted into Florida law is an equitable doctrine.
Here, Thomas and John successfully argued to the trial court that the Trust owned the assets and that as a result Edmund was merely a beneficiary whose interests in the Trust assets derived from the Trust itself. They also contended that renunciation was required to protect them as cotrustees in the event the Trust is declared invalid, to prevent vexatious claims, and to preserve the assets of the Trust. However, all of the cases cited by Thomas and John concerning the renunciation rule involve the receipt of benefits from an instrument executed by a third party, and which, upon that third party’s death, the validity of the instrument was challenged by a legatee, devisee, or beneficiary whose interest derived solely from the instrument itself. See Carman v. Gilbert, 641 So.2d 1323 (Fla.1994) (legatee challenging a will); Barnett Nat’l Bank, 49 So.2d 535 (beneficiary challenging validity of trust created by third party); Pournelle v. Baxter, 151 Fla. 32, 9 So.2d 162 (1942) (legatee challenging validity of a will); In re Estate of Filion, 353 So.2d 1180 (Fla. 2d DCA 1977) (same); In re Estate of Harby, 269 So.2d 433 (Fla. 2d DCA 1972) (same); In re Estate of Pellicer, 118 So.2d 59 (Fla. 1st DCA 1960) (same).
Thomas and John concede that no case in Florida, nor any case in another jurisdiction, has held that a settlor of a self-settled, inter vivos trust must renounce any benefits received before he can challenge the validity of a trust that he himself created and funded with his own assets. We believe no legal precedent exists for this proposition because it is axiomatic that one who funds a trust with his or her own assets does not have to renounce any benefits received as a condition precedent to instituting a challenge to the validity of the trust. The renunciation rule is inapplicable in this scenario because there can be no gift or devise to a set-tlor/beneficiary of a self-settled trust because his or her interest does not derive from the trust itself. This is especially true when the settlor has simply transferred what he or she already legally owns into a trust in which he or she is the sole beneficiary during his or her life.
Unlike the cases wherein a beneficiary’s interest derives solely from an instrument executed by another party, in this case, Edmund was legally entitled to receive the benefits of the Trust even if the Trust never existed. In the event the Trust is declared invalid, no other party besides Edmund (and now Shirley on his behalf) would have an interest or claim in the assets held under the Trust. Under Barnett National Bank, one reason articulated for the renunciation rule was to protect the assets of the trust or other instrument to ensure the assets would be free from adverse claims and available for distribution to the rightful owner or beneficiary. 49 So.2d at 537. However, such a concern does not exist in this case; there are no claimants who could be adversely or injuriously affected by Edmund’s receipt of his own assets from the Trust. Thus, the third rationale for the renunciation rule as articulated in Barnett National Bank is inapplicable to this situation.
In light of the fact that no claimants exist who have an interest superior to that of Edmund’s in the Trust assets, Thomas and John have not alleged a single cognizable claim that could be instituted by Edmund, as the sole beneficiary and sole party with an interest in the Trust assets, against them as cotrustees in the event the Trust is declared valid. We conclude that no such claim exists because regardless of *184 the outcome, Edmund will still receive the assets of the Trust; the only differentiating factor is Edmund’s level of control over the assets. Therefore, the protections afforded to trustees by the renunciation rule are unnecessary where the settlor of a self-settled, inter vivos trust, who is the sole beneficiary during his lifetime, initiates a challenge to the validity of the trust. Hence, the first rationale for the renunciation rule is also inapplicable to the present case.
As to the second rationale, the risk that an individual initiated an insincere or vexatious claim is present in every action. Standing alone, this risk is an insufficient reason to require renunciation. Additionally, this risk is mitigated by the fact Edmund is challenging the validity of his own prior act in executing the Trust rather than the act of another party. Such a self-deprecating action is inherently less suspect.
Last, because Edmund owned all of the assets within the Trust prior to its creation, he would be entitled to the income and principal in any event, and the renunciation rule would not do equity. Under the facts of this case, requiring renunciation would be to elevate form over substance. See Medary v. Dalman, 69 So.2d 888, 890 (Fla.1954). The case of Medary v. Dalman is illustrative of this point. In Medary, the husband was a devisee of a one-fourth interest in certain property bequeathed to him under his deceased wife’s will. Id. at 889. When the will was admitted to probate, the husband filed suit in equity to have a trust declared in his favor as to the entire property because he supplied all the funds to purchase the property and the title was taken in his wife’s name for convenience only. He did not intend for the property to be a gift or advancement to the wife. The husband did not renounce the devise to him under his wife’s will prior to filing suit and the action was dismissed. On appeal, the Florida Supreme Court held that the husband was not required to renounce the devise to him of the one-fourth interest in the same property prior to filing suit because the husband
either owns the entire property, or title to one-fourth of it has vested in him by virtue of his wife’s will. This is a case where the donee would not receive under the will a benefit to which he would not be entitled except for the will, in which event no election is required. A renunciation in such a case would be more of form than of substance, for even if he lost in his suit to establish a resulting trust on the theory that the property is not part of the wife’s estate and consequently not subject to devise, he would still be entitled to take under the will.
Id. at 890 (internal quotation marks and citations omitted).
In light of the foregoing, we find that the renunciation rule is inapplicable to the facts of this case and the trial court erred in granting summary judgment for Thomas and John on the ground that Shirley’s claims were barred by the renunciation rule.
C. Estoppel by Acceptance of Benefits
The trial court’s second justification for granting Thomas and John’s motion for summary judgment was its finding that Shirley was estopped from asserting claims for undue influence and lack of testamentary capacity because Edmund received and accepted disbursements from the Trust.
First, we conclude that the concept of estoppel based upon the acceptance and retention of benefits is practically identical to the renunciation rule. And, in fact, the only differentiating feature is the *185 context in which the two doctrines developed. Generally, the doctrine of estoppel holds “that a person should not be permitted to unfairly assert, assume or maintain inconsistent positions.” Head v. Lane, 495 So.2d 821, 824 (Fla. 4th DCA 1986) (emphasis added). One “form of estoppel occurs where a person attempts to repudiate the obligations and validity of a transaction after accepting the benefits resulting from it.” Id. However, as we held in the context of the renunciation rule, an individual cannot be estopped from challenging an instrument by accepting that which he or she is legally entitled to receive regardless of whether the instrument is sustained or overthrown. Cf. Medary, 69 So.2d at 890; see also Ford v. Yost, 299 Ky. 682, 186 S.W.2d 896, 900 (1944) (“As a general rule of the doctrine [of estoppel], one cannot be estopped by reason of accepting that which he is legally entitled to receive in any event.”); In re Will of Smith, 158 N.C.App. 722, 582 S.E.2d 356, 358 (2003) (finding that estoppel did not bar a challenge to the validity of a will because the devisee would have been entitled to the property even if the will was declared invalid); In re Will of Peacock, 18 N.C.App. 554, 197 S.E.2d 254, 255 (1973) (concluding that it would not be inequitable to allow a party to challenge the validity of a will even though he already accepted a benefit under the will because the party would be entitled to the benefit even if the will was declared invalid).
We have considered the legal authority cited by Thomas and John, but conclude that the eases are inapplicable. See, e.g., AVVA-BC LLC v. Amiel, 25 So.3d 7, 11 (Fla. 3d DCA 2009); Steinberg v. Bay Terrace Apartment Hotel, Inc., 375 So.2d 1089, 1092 (Fla. 3d DCA 1979); Scocozzo v. Gen. Dev. Corp., 191 So.2d 572, 579 (Fla. 4th DCA 1966). First, the creation, termination, and invalidation of trusts is governed by the Florida Trust Code and the equitable principles pertinent to trusts, not general contract law. Second, any and all cases discussing estoppel by the acceptance of benefits submitted by Thomas and John refer to a party accepting benefits under a contract; that is, the benefits referred to are conferred solely by operation of a contractual agreement. Such is not the case here. As discussed at length above, Edmund would have been legally entitled to the assets of the Trust if the Trust was never created and in the event the Trust is declared invalid.
Under these circumstances, the trial court erred in granting summary judgment on Counts I and II based on the doctrine of estoppel by the receipt and acceptance of benefits.
D. Estoppel by Demand for Performance
As a third justification for granting summary judgment in favor of Thomas and John, the trial court found that Edmund was estopped from attempting to have the Trust declared invalid because he made demands for performance under the Trust. Similarly, Thomas and John also argue that Edmund’s execution of a codicil exercising the power of appointment under the Trust constitutes an inconsistent position that should likewise bar his claims for undue influence and lack of testamentary capacity.
As noted previously, the doctrine of estoppel precludes an individual from maintaining inconsistent positions. However, estoppel applies only when the act of taking inconsistent positions results in prejudice to another party who relied on such conduct. See Pelican Island Prop. Owners Ass’n, Inc. v. Murphy, 554 So.2d 1179, 1181 (Fla. 2d DCA 1989) (“The doctrine of estoppel should be applied with great caution and is applied only where to *186 refuse its application would be virtually to sanction a fraud.”). A party is permitted to plead in the alternative during litigation, and it follows that a party may also take inconsistent actions in his or her own affairs as a mechanism for “hedging the bets,” so long as that action does not result in prejudice to another party. See Fla. R. Civ. P. 1.110(g) (“A party may ... state as many separate claims or defenses as that party has, regardless of consistency and whether based on legal or equitable grounds or both.”). Here, Thomas and John have not alleged any prejudice resulting from Edmund’s allegedly inconsistent positions.
As such, we find that Edmund’s demand for performance and execution of the power of appointment under the Trust do not act to bar his claims that the Trust was invalid, and, hence, the trial court erred in granting summary judgment on this ground.
E. Estoppel by Taking Inconsistent Legal Positions (Judicial Estoppel)
Last, the trial court ruled that Shirley was estopped from challenging the validity of the Trust because she took an inconsistent legal position when she filed a petition for probate and appointment of personal representative for Edmund’s estate in Luce County, Michigan, in which she listed the Trust as a beneficiary and asset of Edmund’s estate. According to the trial court, such action constituted an admission that the Trust was valid, estop-ping Shirley from alleging that the Trust was invalid in the current proceeding.
“ ‘Judicial estoppel is an equitable doctrine that is used to prevent litigants from taking totally inconsistent positions in separate judicial, including quasi-judicial, proceedings.’ ” Blumberg v. USAA Cas. Ins. Co., 790 So.2d 1061, 1066 (Fla.2001) (quoting Smith v. Avatar Props., Inc., 714 So.2d 1103, 1107 (Fla. 5th DCA 1998)). The doctrine of estoppel against inconsistent positions in judicial proceedings
“is based upon the theory that, where a party has made a record of his own case, upon which record he has sought and secured from a court a final judicial order or judgment based on the allegation made by him that the facts of his case as alleged by him in his own pleadings are true, which allegations as to the issuable facts have been likewise accepted by the opposite party as true, for the purpose of having rendered by the court its final decision or judgment on such record, thereafter each of the parties is estopped to alter his position on the record to the prejudice of an adverse party, where the parties and the subject-matter involved in the litigation remain the same.”
Federated Mut. Implement & Hardware Ins. Co. v. Griffin, 237 So.2d 38, 41-42 (Fla. 1st DCA 1970) (quoting Palm Beach Co. v. Palm Beach Estates, 110 Fla. 77, 148 So. 544, 548 (1933), abrogated by Ed Ricke & Sons, Inc. v. Green, 609 So.2d 504, 506 (Fla.1992) (departing from Palm Beach Co. to the extent that it prohibited amendments of pleadings to plead in the alternative)). Judicial estoppel applies when the following elements are met: (1) the party against whom estoppel is sought must have asserted a clearly inconsistent or conflicting position in a prior judicial proceeding; (2) the position assumed in the former proceeding must have been successfully maintained; (3) both proceedings must involve the same parties and same questions; (4) the party claiming es-toppel must have relied on or been misled by the former position; and (5) the party seeking estoppel must have changed his or her position to his or her detriment based on the representation. See Blumberg, 790 *187 So.2d at 1066 (quoting Chase & Co. v. Little, 116 Fla. 667, 156 So. 609, 610-11 (1934)); In re Estate of Sterile, 902 So.2d 915, 922 (Fla. 2d DCA 2005).
First, in this case, Shirley’s act of listing the Trust as a devisee on the petition for administration and as an asset of Edmund’s estate does not constitute an inconsistent legal position because, as the personal representative of Edmund’s estate, the probate rules of Michigan required her to list all beneficiaries and assets of the estate. See Mich. Comp. Laws §§ 700.3301(l)(a)(ii) & 700.3706 (2011). Moreover, under Michigan law, an inventory does not provide conclusive evidence of the assets of an estate and may subsequently be corrected. See Peckham v. Hoag, 57 Mich. 289, 23 N.W. 818, 819 (1885). Merely listing the Trust in these documents did not constitute an admission that the Trust is valid, and the position asserted by Shirley in the probate proceeding cannot be deemed an affirmation as to the validity of the Trust.
If we were to hold otherwise, the practical effect of such a holding would lead to an untenable result. When Shirley filed the petition for probate and inventory, no court had ruled that the Trust was invalid and unenforceable, and Shirley could not proceed as though a court had so determined. We decline to discourage individuals from making a full and fair disclosure to a court in a probate proceeding. Furthermore, the record contains no evidence that the Trust was deemed valid by judicial decree or other official court action in the Michigan probate proceeding. As such, the second element of judicial estop-pel, i.e., that the inconsistent position assumed must have been successfully maintained in another proceeding, has not been met. See Olin’s Inc. v. Avis Rental Car Sys. of Fla., Inc., 104 So.2d 508, 511 (Fla.1958).
Second, even if the act of listing the Trust as a devisee or asset of Edmund’s estate constituted an admission that the Trust was valid, Thomas and John have not alleged that they relied on that representation or that they changed position on such admission to their detriment. Thus, the fourth and fifth elements of judicial estoppel have not been met either.
Consequently, the trial court erred in granting final summary judgment in favor of Thomas and John on the basis of judicial estoppel.
III. CONCLUSION
For the foregoing reasons, we conclude that the trial court erred in granting final summary judgment in favor of Thomas and John on Shirley’s claims for undue influence (Count I) and lack of testamentary capacity (Count II). Accordingly, we reverse and remand for further proceedings.
Reversed and remanded.
SILBERMAN and WALLACE, JJ„ Concur.

. The motion for summary judgment at issue in this appeal was filed by Thomas and John; therefore, for clarity's sake we do not refer to Appellees Kathleen Dunn, David Fintak, and Matthew Fintak in this opinion.

. The parties do not dispute that until the creation of the Trust, Edmund had regularly consulted attorney Michael Reiter to conduct his legal affairs.

. Edmund was removed as cotrustee by court order in October 2008.

. Article X of the Trust also provides that if disbursements must be made from the Trust to "a person under legal disability or to a person not adjudicated legally incapacitated but who, by reason of illness or mental disability, is in the opinion of the [cotrustees] unable to properly administer such amounts, then such amounts shall be used by the [co-trustees] directly for the beneficiaryf].” The interplay of Articles III(B) and X form the basis of several of the disputes below, but is not relevant to the issues raised in this appeal.

. Although Article VI of the Trust provides for distribution to Edmund's children in six equal shares, Michael was mistakenly omitted from the distribution list. This omission forms the basis of Thomas and John's counterclaim for reformation of the Trust to include Michael as a named beneficiary.

. A second petition for incapacity was filed by Edmund's children in March 2010 after Edmund relocated to Michigan. This petition was also dismissed in favor of Edmund.

. The basis of this claim arises from Edmund and Shirley's impermissible withdrawal of certificates of deposit from Wachovia Bank, N.A., titled in the name of the Trust. These allegations also formed the basis of an action initiated by Thomas and John in 2008 against Wachovia in the United States District Court for the Middle District of Florida. In that action, Wachovia impleaded Shirley and Edmund. The case was settled in June 2010 with Wachovia contributing $49,000 to the Trust and Edmund and Shirley contributing an additional $10,000. As part of the settlement agreement, Thomas and John retained the right to pursue a claim against Edmund and Shirley for the remainder of the funds improperly removed from Wachovia Bank.